John A. Campbell et al., Partners, etc., v. James B. Millar, Guardian, etc.

1. PRACTICE—*Notice of Special Matters with the General Issue.*— Under Section 29 of the Practice Act, providing that "notice in writing of the special matters intended to be relied on for a defense" may be filed with the general issue, a mere negation can in no sense be deemed "special matter."

Campbell v. Millar.

2. SAME—*Question of Plaintiff's Authority to Sue.*—The question of the plaintiff's representative character, and his authority to sue in such character, can not be raised by filing a· notice with the general issue. Such a want of authority must be pleaded, and failing to do so the character of the plaintiff stands admitted on the record.

3. FOREIGN GUARDIANS—*Power to Sue in this State—Comity.*—By the comity accorded guardians of foreign States, under Section 41, Ch. 86, Hurd's R. S. 1897, a guardian appointed by the courts of a foreign State may maintain a suit in the courts of this State.

4. RATIFICATION—*Unauthorized Act of Agents.*—The unauthorized acts of an agent may be ratified by his principal.

5. SAME—*Knowledge of the Transaction.*—A less stringent rule may properly be laid down where one purposely shuts his eyes to means of information within his own possession and control, and ratifies an act deliberately, having had all the knowledge in respect to it which he cares to have.

6. SAME—*Ignorance Will Not Always Defeat.*—Ignorance which is intentional or deliberate will not always defeat a ratification.

7. SAME—*What is a Ratification.*—Where a person claiming to be an agent, purchased on behalf of his principal a lot of mules, who. upon receiving the mules by consignment, protested that they were bought and assigned to him without authority, but having afterward sold them, he was held to have ratified the act.

Assumpsit, for mules sold and delivered. Trial in the Circuit Court of St. Clair County; the Hon. MARTIN W. SCHAEFFER, Judge, presiding. Verdict and judgment for plaintiff; appeal by defendant. Heard in this court at the February term, 1899. Affirmed. Opinion filed September 9, 1899.

WISE & McNULTY, attorneys for appellants.

The appellants never ratified Powell's act, expressly or impliedly. Whatever they did was not done with full knowledge of the material facts, or with intent to ratify. Matthews v. Hamilton, 23 Ill. 470; Reynolds v. Ferree, 86 Ill. 570; Proctor v. Tows, 115 Ill. 138; Bank v. Ferris, 118 Ill. 465.

Where a stranger, or mere volunteer, in the name of another, does an unauthorized act, the latter need take no notice of it, although informed it was done in his name. He is only bound by an affirmative ratification. Ward v. Williams, 26 Ill. 451; Searing v. Butler, 69 Ill. 578.

HARRY G. HART and TURNER & HOLDER, attorneys for appellee.

Under the plea of non-assumpsit, or general issue in assumpsit, the character in which the plaintiff sues is admitted and need not be proven. McKinley v. Braden, 1 Scam. 64; Ballance v. Frisby, 2 Scam. 63; Collins v. Ayers, 13 Ill. 358: Chicago Legal News Company v. Browne, 103 Ill. 320.

The defendant may plead the general issue and give notice in writing, under the same, of the special matters intended to be relied on for a defense on the trial, under which notice the defendant shall be permitted to give evidence of the facts therein stated. Practice Act, Ch. 110, par. 29, page 3003, Vol. 3, Starr & Curtis.

The notice is not a plea and calls for no answer from plaintiff. No question arises until defendant offers evidence to support it on trial, and the defense must be proved, as stated in the notice. Burgwin v. Babcock, 11 Ill. 28; Bailey v. Valley National Bank, 127 Ill. 332.

General issue and notice sworn to do not put in issue the execution of a note. Bailey v. Valley National Bank, 127 Ill. 332.

Mr. Justice Bigelow delivered the opinion of the court.

This appeal comes from the Circuit Court of St. Clair County, which rendered a judgment against appellants in favor of appellee for the sum of $600. The facts are: Appellee was appointed guardian of Alex. McIlvain, an insane person, by the Probate Court of Johnson County, Missouri, in December, 1897. On January 5, 1898, appellee sold in Warrensburg, Missouri, to one Powell, 114 mules at the purchase price of $8,370, there being three different prices for three different classes of mules.

In the purchase of the mules, Powell represented himself to be the authorized agent of appellants, who were doing a commission business in horses and mules at the National Stock Yards in East St. Louis, in this State. Powell had previously been in the employ of Campbell, Reid & Ward, soliciting and buying mules for them, and the evidence tends to show that Powell had been discharged by that firm on October 8, 1897, when Campbell, Reid & Newgass suc-

ceeded to the business of the firm, though Powell denies such discharge, and testified that he had the same authority to solicit and buy for the new firm that he had for the old firm. Appellee had never before dealt with appellants nor did he, at the time he sold the mules to Powell, ascertain the extent of Powell's authority to bind appellants.

On January 6th fifty mules, in two car loads, were shipped to appellants, one car in the name of Lindsey, and the other in the name of appellee. At the time of shipment Powell drew two drafts on appellants in favor of Millar, one for $3,227.50, the purchase price of the mules about to be shipped, and the other for $500, being earnest money on the remaining sixty-four mules left in Warrensburg to be shipped as directed by Powell within a week thereafter.

The two car-loads of mules arrived at the stock yards in East St. Louis on January 7th. On January 8th appellants sold some of these mules for $1,282.50. At what time in the day this sale was made the evidence fails to show. On January 12th they sold the balance for $2,012.50. At the time of these transactions, one Conway was the manager of appellant's business at the stock yards and after Powell had purchased the mules he wrote Conway about the transaction; Conway lost the letter, and the evidence fails to show, with absolute certainty, its precise contents, whether Powell had purchased the mules on his own account or on account of the appellants, and what prices he had paid for them. On the receipt of the letter, Conway telegraphed Powell to ship one load of "cotton mules" (small mules) and one load of "sugar mules" (large mules), and not to ship in his own name. On January 7th appellants telegraphed appellee, asking him, "Where is stock covered by Powell drafts? Answer." In reply appellee telegraphed the same day that fifty mules were shipped the day before, and sixty-four mules were held for orders and final shipment. On the same date Conway telegraphed Powell he thought the "big mules" high, and directed Powell not to buy any more mules, as Reid would not pay the draft, and requested Powell to come in to East St. Louis.

On January 8th appellants received the following dispatch, dated the same day: "Contract for mules made by Millar with your agent Powell completed, and we expect immediate payment of the drafts. On failure to pay at once we will demand damages. Fulkerson & Hart, attorneys for Millar."

The $500 draft was paid on January 7th and charged to Powell's account with appellants. Appellants refused to pay the $3,227.50 draft and it was protested for non-payment.

On January 15th, appellants wrote appellee enclosing account of sales of the mules and also stating that Powell had no authority to buy them for account of appellants and at the same time sent a draft to appellee for the sum of $2,590.60, the proceeds of which was retained by appellee. The latter amount was arrived at in the following way: Total proceeds of the mules, $3,295; charges against them for commissions, $40; yardage, etc., $204; net proceeds, $3,090.60, from which was deducted the $500 draft.

This $2,590.60 draft to Millar was charged to Powell's account, together with the charges for commissions, yardage, feed, etc., he being credited with the gross proceeds of the mules.

On January 17th, appellee went to East St. Louis and saw appellants in reference to the purchase of the mules, when appellants again reiterated that Powell had no authority to purchase the mules so as to bind appellants.

On January 24th, appellee notified appellants by letter that he would sell the mules at the best price he could get and apply the proceeds of the sale on the contract with Powell, and that he would look to them for any balance that might be found to be due, and if such proposed action on his part was not agreeable to appellants, to notify him what disposition should be made of the rest of the mules. To this letter no reply was made by appellants. The balance of the mules were afterward sold by Millar and he claimed a loss of $605.95 on the entire transaction. A large amount of evidence was taken by both parties in

proof and disproof of Powell's authority to bind appellants by this purchase, it being claimed by appellants that Powell had no authority except to solicit shipments of mules, to be sent to them to be sold on commission; and that in cases where Powell bought outright, he could only buy for himself, and that he had a right to draw on appellants for money, the drafts to be honored only after the stock which he had purchased had arrived at the yard, so that Campbell, Reid & Newgass could examine the stock and determine whether they could safely pay the drafts. But inasmuch as the question of Powell's authority to buy the stock, under the statement of facts heretofore given (which statement is substantially admitted by appellants in their brief), we do not further advert to the evidence on this branch of the case, nor do we deem it of importance to consider the precise extent of Mr. Conway's authority in what he did, nor as to matters of which he received notice.

The declaration, as originally filed, describes Millar as "conservator;" on the trial plaintiff amended it so as to show that he sued as guardian, which seems to be the official designation in Missouri, of a person in charge of an insane person's property.

After the amendment had been made, appellants filed a notice in connection with the general issue, under Section 29 of the Practice Act, that under the pleadings they would deny and prove:

"1st. That James B. Millar is not the guardian of Alex. McIlvain, a person of unsound mind; that he was not such guardian at the time of the alleged sale of the mules; that he was not such guardian at the time this suit was brought. 2d. That James B. Millar had no power or authority whatever, as guardian, to sell the mules; and 3d, that Alex. McIlvain is restored to reason, is sane, and that the plaintiff has no right to bring and further maintain this suit."

On the trial the plaintiff introduced in evidence certified copies of the order appointing appellee guardian; of the letters of guardianship, and of the report of the sale of the mules, and of the order authorizing the plaintiff to bring the present suit.

The copies were all certified to by the clerk of the Probate Court of Johnson County, Missouri, under the seal of that court. The certificates were not in compliance with the act of Congress, and they failed to state, in conformity to Section 16 of Chapter 51 of Hurd's Revised Statutes of 1897, that the clerk was the keeper of the records. Proper and specific objections were interposed by appellants to the admissbility of this evidence, but the court overruled them and admitted the records of the Missouri court. This action of the court is assigned for error. The record is not in a condition for us to pass upon the questions raised.

Section 29 of the Practice Act has, in our opinion, no application to the denials set out in the notice. The language of the statute is, that "notice in writing of the special matters intended to be relied on for a defense" may be filed with the general issue. A mere negation can in no sense be deemed "special matter." A denial is no "matter" at all; it is denial of matter existing elsewhere than in the notice. To have raised the question, appellants should have pleaded, instead of filing the notice, and having failed to do so, the representative character of the plaintiff stood admitted on the record. The Union Railway and Transit Co. v. Shacklet, 119 Ill. 233.

There was no legally formed issue on the question of plaintiff's representative character, and though the certificate of the clerk of the Missouri court should be admitted to be insufficient, the evidence was not needed by the plaintiff.

As to the second part of the notice, that appellants would prove that at the time the plaintiff sold the mules he had no authority to sell them; this is a mere denial, the same as the first part of the notice is, but with this difference: the first denial attempts to take issue upon an allegation contained in the declaration, to wit, the representative character of the plaintiff, while this denial attempts to take issue upon an allegation not contained in the declaration at all. It seems clear that—waiving the question whether there was "special matter" in this part of the notice—there

ought to have been an allegation in the declaration that the plaintiff had such authority; but appellants did not demur to the declaration, and by the notice they treated it as sufficient, and if it should be admitted that the notice contained "special matter," appellants took upon themselves the proof of the allegation in the notice, and not having furnished such proof, or attempted to do so, the notice goes for naught, and the issues are so framed that appellants did not on this question compel appellee to show his authority to bring the suit. The certified order of the Missouri court, authorizing plaintiff to bring the action, does not establish the contention of appellants, since, if the order is properly in evidence, it abundantly proves the plaintiff's right to sue, and if improperly in, as contended by appellants, then there is an utter absence of proof to support the " special matter " of this part of the notice.

As to the last part of this notice, it no doubt contains special matter, but there is no evidence to support it in the record. It is no more than an unproven plea. We perceive no available error in the admission of the records and orders of the Probate Court, and we see no reason, under the pleadings as they stand, and by the comity accorded guardians of foreign States under Section 41 of Chapter 86 of Hurd's Revised Statutes of 1897, why appellee can not maintain this action in this State.

Two clearly defined issues were before the jury on the main contention of the case; one, the authority of Powell to purchase the mules for appellants; the other, ratification of the acts of an agent claimed by appellants to have been wholly unauthorized.

If the only evidence in the record to support the verdict of the jury was the evidence as to Powell's authority to purchase the mules, and in the purchase to bind appellants, we might have come to the conclusion that the seventh, eighth and ninth assignments of error by appellants ought to have availed, because the verdict is contrary to the law and the evidence on this feature of the case.

Although the testimony of Conway fails to show the pre-

cise contents of the letter from Powell, there is abundance
of evidence that it must have stated the prices that he had
paid for the different classes of mules; that it must have
stated the number and kinds of mules bought; otherwise how
could Conway have said in the telegram to Powell that the
big mules were " high; " and how could he have directed
him to send one car-load of " cottons " and one car-load of
" sugars ? "   The fact that he directed two car-loads of mules
shipped shows that Conway knew that a large number of
mules had been purchased; and the fact that he says the
small mules will bring " fifty," is evidence that he wanted
Powell to know that, though there might be a loss on the
large mules there might also be a profit on the small ones, a
thing he could not know, unless he knew the price Powell
bought the small mules at.   There is evidence then tending
to show that Conway knew the sizes, numbers and prices of
the mules, and that he communicated this information to
Dr. Reid, and then Reid refused to pay the draft for $3,227.50.
The fact mentioned in the telegraphic correspondence that
Dr. Reid would not pay the draft was no proof that appel-
lants knew that Powell had bought the mules on their
account, for, under the arrangement with Powell, the firm
had a right to inspect them before payment.   But the mess-
age from Fulkerson & Hart, that Powell, as the agent of
appellants, had bought the mules from Millar, completed
appellants' knowledge as to the Powell contract.

Whether the appellants received this dispatch before or
after the sale of the mules on January 8th is left uncertain
by the evidence; but on January 12th, when they sold
$2,010.50 worth of mules, they unquestionably knew every
material fact relating to the purchase of the mules.   Appel-
lants should have refrained from selling the balance of the
mules on January 12th had they desired to repudiate
Powell's contract.

Even should it be admitted that appellants had not full
knowledge of the transaction, still the law seems to be set-
tled that " a less stringent rule may properly be laid down,
where one purposely shuts his eyes to means of information

within his own possession and control, and ratifies an act deliberately, having had all the knowledge in respect to it which he cares to have." Kelley v. Newburyport Horse R. R. Co., 141 Mass. 496. "Ignorance which is intentional or deliberate will not defeat ratification." 2 Am. & Eng. Ency. of Law, 2d Ed., page 1190. Although this precise view of the law was not presented in appellee's instruction as to ratification, yet the proposition was involved therein, the instruction calling for full knowledge, being in that respect more burdensome to appellee than was necessary.

Furthermore, ratification is implied as well as express. Mechem on Agency, Secs. 134–150. That appellant may have had express intent not to ratify, does not prevent a ratification. Ib. Sec. 146.

To have brought this case within the principle adverted to in Ward v. Williams, 26 Ill. 451, appellants should have refrained from selling the mules on January 12th, and when they elected not to do so, they made the contract of Powell their own. Mechem on Agency, Sec. 130.

Admitting the inaccuracies claimed to exist in appellee's first two instructions relating to Powell's authority, the jury were fully and accurately instructed on the law by thirteen instructions given for appellants, placing the questions at issue on this branch of the case in every conceivable light before it, and the jury no doubt found for appellants on this issue. We are unable to see how the jury could have found otherwise than they did after it was shown that appellants sold plaintiff's mules with knowledge or means of knowledge of Powell's contract.

Complaint is made of certain matters submitted in appellee's third instruction. Whether Powell had power to buy the mules or not was immaterial; whether the dispatch sent to Powell by Conway to stop buying mules and come in to East St. Louis was within the scope of his duties or not; and whether the dispatch was advice merely, or a command, were immaterial matter, for appellants sold the mules after they knew Powell had made a contract, purporting to be made by him as their agent. Conway was one of the instru-

mentalities by which appellants received a part of the knowledge relating to the transaction, and while, in the view we take of the case, this instruction can not be regarded as accurate, yet, the gist of it is the knowledge of appel-lants in reference to the Powell contract before they dis-posed of the mules, and the result of ratification which followed therefrom.

Error is assigned by reason of the court's refusal to give some of the instructions asked by appellant; but the mat-ters are not noticed in appellants' brief and so this assign-ment must be regarded as waived.

Under the views expressed, supposed errors in admitting and excluding certain evidence relating to Powell's author-ity become immaterial. Finding no error in the record of sufficient importance to reverse the case, the judgment is affirmed.