# CASES

## SECOND DISTRICT

OF THE

# APPELLATE COURT OF ILLINOIS,

DURING THE YEAR 1904.

---

### Lovell Harrison v. A. E. Augerson.

#### Gen. No. 4,360.

1. REAL ESTATE COMMISSIONS—*when, may be recovered.* Where one person appoints another as his agent to sell real estate for a certain sum and agrees to pay him a specific sum for making a sale, and having given him a definite period in which to accomplish such sale, but before the time so given has elapsed, rescinds his contract and revokes the agency and thus prevents a sale, he is liable for the amount agreed to be paid by way of commission.

Action of assumpsit. Appeal from the County Court of Peoria County; the Hon. WILBERT I. SLEMMONS, Judge, presiding. Heard in this court at the April term, 1904. Affirmed. Opinion filed April 21, 1904.

PINKNEY & McROBERTS, for appellant.

H. R. DOUGHERTY, for appellee.

MR. JUSTICE FARMER delivered the opinion of the court.

Appellant was the owner of certain real estate in the city of Peoria, and on the 31st day of January, 1903, he executed a written authority to appellee to sell it. The written instrument was as follows:

"I, the undersigned, Lovell Harrison, of Peoria, of county of Peoria and State of Illinois, do hereby authorize A. E. Augerson, of Peoria, to bargain and sell the property de-

scribed on opposite side hereof, at the price set forth, and do hereby agree that I will convey said property on the sale of the same, and further agree that the above described property shall be left with said A. E. Augerson, for sale as above, for the term of one month from date hereof, and if said A. E. Augerson sells or is in any manner instrumental in selling said property, I will pay his commission thereon of two hundred dollars on the amount of said sale.

Dated this 31 day of January, 1903.

LOVELL HARRISON.

Possession granted April 1st."

On the opposite side was a description of the property, also terms of the sale, which were $5,200 cash. Soon after securing the agency to sell the property, appellee began negotiations for its sale to the board of school inspectors of the city of Peoria. He testifies he drew a plat of it and gave it to the school authorities and told them all about it, the price it could be bought for and the terms of sale. On the afternoon of February 12, appellant called at appellee's office and told him he had decided to withdraw the property from sale. Later, on the same day, the board of school inspectors notified appellee that they had decided to take the property at the price and on the terms it was offered them. There is very little dispute about the material facts. Appellant says it was about 2 P. M. when he called and notified appellee of his decision to withdraw the property from sale, while appellee says it was in the neighborhood of 3 P. M. Whatever the exact time of day it may have been, there is no dispute that it was before the school inspectors notified appellee of their acceptance of his property. The board spent the greater portion of that afternoon looking at different properties offered them, appellant's among the rest, and Mr. Triebel, chairman of the building committee, testified that after completing the inspection, they held a meeting and decided to purchase appellant's property, and that about five o'clock he telephoned appellee accepting his offer of it, and the following day sent him a written acceptance. Both parties to the suit testify that when appellant told appellee he had decided to withdraw the property from sale, appellee objected to his doing so,

and appellant testified that appellee said he had a very favorable opportunity for making a sale, and that the board of school inspectors were going to examine it that afternoon. About an hour after receiving notice by telephone that the school authorities would take the property, appellee saw appellant and told him of it, and appellant stated that he would not execute a conveyance, and stated to appellee that he had so notified both him and the school inspectors before they had examined the property. Appellee then notified appellant that he claimed the $200 commission, and payment being refused, brought suit. He recovered for the full amount claimed and defendant appealed.

Appellant's contention is that he had the power and right to withdraw the property from sale and terminate the right and authority of appellee by notice to him that he had withdrawn it, at any time before sale was made, and in such case there would be no liability. The position of appellee is that the written agreement gave him the authority to sell the premises at any time within one month from its date, and that appellant had not the right during that period to withdraw the property from sale and thereby defeat appellee's right to the commission agreed upon, if during the month he procured a purchaser who was able, ready and willing to buy the property at the price and on the terms agreed upon.

It cannot be denied that if before appellant notified appellee of his intention to withdraw the property from the market, appellee had notified him of the acceptance of the property by the school authorities he would have been entitled to his commission. Could, then, its withdrawal, and notice to appellee thereof a few hours before an eligible purchaser had agreed with appellee to accept the property, and after the performance by him of all the services that led to the proposal of the purchaser to take the property, and during the period given appellee to make the sale, operate to prevent a recovery? To us both reason and justice seem to answer in the negative and in so answering to be supported by authority. Appellant cites a number of au-

thorities in support of the proposition that the agency created by the instrument in writing above set out, was revocable, and argues that appellant having the power to revoke it he necessarily would not be liable after doing so. He appears to have overlooked the distinction between the *power* and the *right* to revoke. It may well be that the principal has the power of revocation of such an agency as was there created, but it does not follow that after having agreed with appellee that he would not exercise the power for one month, that he had the *right* to revoke the agency within that time without incurring any liability in the matter. Mechem on Agency, secs. 209 and 615; Gleason v. McKay, 37 Ill. App. 464.

Appellant also cites numerous authorities in support of the proposition that an option to buy land, given one without any consideration, may rightfully be withdrawn at any time before acceptance. We are not disposed to take issue with appellant upon the proposition, but we do not consider any such question is involved in this case. This is not a contest between a proposed purchaser with an option and the owner, and whatever the rules of law may be in such a case, they can have no application here.

Appellant having appointed appellee his agent to sell the property for a certain sum, and agreed to pay him $200 for making the sale, and having given him one month in which to do it, and having before the time elapsed rescinded his contract and revoked the agency, we think appellee had the right to recover. Mechem on Agency, sec. 968; Gleason v. McKay, 37 Ill. App., *supra;* Rand v. Cronkrite, 64 Ill. App. 208; L. S. & M. S. Ry. Co. v. Richards, 152 Ill. 59.

The court properly refused the propositions of law asked by appellant and properly gave judgment for appellee, and that judgment is affirmed.

*Affirmed.*