### Jacob J. Schwartz, trading as Schwartz & Schwartz, Appellant, v. Leander Akerlund, Appellee.

#### Gen. No. 30,524.

1. BROKERS—*when exclusive sales agency agreement becomes binding upon owner of property.* Where the owner of property gave in writing to a licensed real estate agent an exclusive agency for the sale of the property, on terms therein specified, for a period of thirty days and until the agency was revoked in writing, the agent to show and advertise the property at his own expense, such contract became binding and irrevocable except as therein provided after the agent had advertised the property and shown it to prospective purchasers.

2. DAMAGES—*measure for owner's breach of exclusive agency for sale of property.* Where the owner of property, after having given to a licensed real estate agent an exclusive agency to sell the same, on certain specified terms, for a period of 30 days, sold such property through another broker, the measure of damages recoverable by the holder of the exclusive agency contract in an action against such owner for compensation was the commission upon the price for which the property was actually sold as stated in such agreement.

Appeal by plaintiff from the Municipal Court of Chicago; the Hon. GEORGE B. HOLMES, Judge, presiding. Heard in the third division of this court for the first district at the October term, 1925. Reversed and judgment here. Opinion filed May 5, 1926.

JOHN R. McCABE, for appellant.

BENJAMIN E. COHEN, for appellee; WYMAN, HOPKINS, McKEEVER & COLBERT, of counsel.

MR. JUSTICE TAYLOR delivered the opinion of the court.

The plaintiff, Jacob J. Schwartz, trading as Schwartz & Schwartz, brought suit in the municipal court, in a first-class case, against the defendant, Leander Akerlund, to recover $2,055, as real estate commissions. There was a trial before the court, without a jury, and a judgment in favor of the defendant. The plaintiff prosecutes this appeal.

In the statement of claim it is alleged that the plaintiff was a licensed real estate dealer; that, on August 3, 1923, the defendant gave him, the plaintiff, an exclusive agency, evidenced by a writing, for one month and thereafter until the agency was revoked in writing, for the sale of certain real estate; that the defendant, by the same writing, promised to pay him, the plaintiff, a commission of 3 per cent of the price obtained; that the price was $68,500, or any less sum which the defendant would agree to accept; that the plaintiff accepted the agency and performed certain services in endeavoring to secure a purchaser; that, while the agreement was in effect, the defendant sold the property through a third person, to the damage of the plaintiff in the sum of $2,055; that, although he, the plaintiff, has made a demand for payment, the defendant has refused to pay.

The defendant in his affidavit of merits denied that the plaintiff on August 3, 1923, was a licensed real estate dealer; denied that on that date he executed and delivered to the plaintiff the writing mentioned in the statement of claim; denied that the plaintiff accepted the agreement and performed certain serv-

ices in regard to securing a purchaser for defendant's property, and alleges that he, the defendant, sold the property through his own efforts, and is not indebted to the plaintiff in any sum whatever.

The evidence is substantially as follows: In 1923, the plaintiff was a licensed real estate dealer, with a place of business at 4408 Broadway, Chicago. On August 3, 1923, M. Schwartz, an employee and son of the plaintiff, at the request of the defendant, at the latter's home, drew up the agency contract, here in question, and it was then signed by the defendant. It is as follows:

"I hereby give you the exclusive agency for the sale of my property described as 4501 to 5 Clifton Ave. a 1st morg. $35,000 7% due 1926 balance to take back 2nd morg. with prepayments of 125.00 per mo. 7% until paid with a release of 2nd when a new first is made, for a period of one (1) month from this date and thereafter until this agreement is revoked by me in writing, at a price of $68,500, or any less sum which I shall agree to accept. I agree to pay you a commission of three (3) per cent of the price obtained.

"With a cash payment down of $5,000 to $20,000.

"In consideration of having given you this exclusive sale agreement it is understood that you are to advertise and show the property without any expense to me."

After August 3, 1923, according to the testimony of the plaintiff's son, in an endeavor to sell the property, the plaintiff, through his office, had prospective purchasers, four or five times a week, taken to and through the property. Sometimes the defendant and sometimes his wife or son showed them through the property. The plaintiff, also, advertised the property for sale a number of times in The Chicago Tribune. On August 24, 1923, the defendant and his wife, through one Lapin, a real estate broker, entered into a contract in writing, by which they agreed to sell to

one Goodkin, and the latter agreed to buy the property in question for $65,000, and, accordingly, on October 11, 1923, the property was conveyed by warranty deed by the defendant and his wife to Goodkin. Lapin, the broker who negotiated the sale to Goodkin, testified that prior to the execution of the contract of August 24, he had received the information from the defendant that the plaintiff had the exclusive agency to sell the property. He further testified that he himself got his commission. The evidence of the defendant is that he could not read or write English; that he signed the exclusive agency contract; that he understood it was for 30 days; that later in the latter part of August he told Martin Schwartz, plaintiff's son, that the 30 days would soon be up, and asked him, Schwartz, to give up the· exclusive agency as he, the defendant, wanted to give it to some other real estate people; that Schwartz said: "That's all right, go ahead and sell"; that he asked Schwartz for something in writing, and Schwartz said: "It is not necessary, go ahead." In October, after the defendant had sold his property to Goodkin, according to the plaintiff's testimony, the defendant called and he, the plaintiff, asked him about the commission, stating that the record of the sale had just come out, but the defendant threatened to fight and refused to pay anything.

As the plaintiff was given an exclusive agency for one month from August 3, and thereafter until the agreement was revoked in writing, and was promised a commission of 3 per cent of the price obtained, and as he advertised the property for sale, and on a number of occasions showed various prospective customers through the premises, the question arises whether the sale of the property by the defendant on August 24, through another broker to Goodkin, not only put an end to the exclusive agency of the plaintiff, but deprived him of any right to compensation, either by way of damages or stipulated .commission. In other

words, as the evidence shows that the plaintiff accepted the agency and undertook "to advertise and show the property without any expense" to the defendant, and as that was the status on August 24, only 21 days after the exclusive agency had been given, and while it still remained outstanding, unrevoked by any writing, does it follow that the defendant was entirely within his rights and that the plaintiff had no cause of action? The question arises whether what was done by the owner was merely the making of an offer which was revocable any time before complete performance, revocable because there was no complete contract between the parties; or whether the agent, having rendered some service, may be said by such service to have transmuted the offer into a binding promise, which binding promise became a part of a unilateral contract, but which unilateral contract was only partly executed by the promisee. Whether the defendant was liable to the plaintiff for a stipulated commission depends upon whether or not there was a contract between them. A mere offer is not a contract, but when the offeree pursuant to the offer has done some work and spent some money, which in and of themselves constitute some consideration, may it be said that the offer has been transmuted into a binding promise and become part of the contract between the parties, even though the offeree has only partly performed the consideration provided for in the offer? In a note to section 2452 (p. 2059) Mechem on Agency, 2nd ed. vol. 2, the subject is discussed quite at large. In our judgment, speaking generally, such an offer is irrevocably accepted by the first unequivocal act which may be said to constitute something in the nature of substantial consideration; otherwise the law would permit the capricious withdrawal of an offer when the consideration was all but completed and deprive the offeree of a remedy even for what he had done. We are of the opinion, therefore, that there was a binding contract.

As a result of the defendant's written offer and the things done by the plaintiff in pursuance of that offer and as a consideration therefor, the question arises —in view of the defendant selling the property through another broker within the time covered by the exclusive agency, and thus voluntarily incapacitating himself from fulfilling his written offer—What is the measure of the plaintiff's damages? The claim of the plaintiff is for $2,055, i. e., 3 per cent of $68,500, or 3 per cent on any less sum which the defendant would agree to accept, the price fixed in the written offer; in other words, for the specific amount that would be due upon execution of the contract by the plaintiff.

Many cases are cited on the subject of damages, among which are the following: *Rand v. Cronkrite,* 64 Ill. App. 208; *Harrison v. Augerson,* 115 Ill. App. 226; *Goodmanson v. Rosenstein,* 144 Ill. App. 243; *Hanlon v. Dunne,* 189 Ill. 123; *Novakovich v. Union Trust Co.,* 89 Ark. 412; *Attix v. Pelan,* 5 Ia. 336; *Wozniak v. Siegle,* 226 Ill. App. 619; *Lake Shore & M. S. Ry. Co. v. Richards,* 152 Ill. 59; *Green v. Cole,* 127 Mo. 587; *Crane v. McCormick,* 92 Cal. 176; *Woolf v. Sullivan,* 224 Ill. 509, and *Wentworth v. Mann,* 178 Ill. App. 621.

Counsel for the defendant puts emphasis on the *Wentworth* case, *supra,* but in that case the offer did not contain the words obliging the agent as part of the consideration "to advertise and show the property without expense to the owner." Here the owner said: "In consideration of having given you this exclusive sale agreement it is understood that you are to advertise and show the property without any expense to me." And further in that case the court held that the judgment was not consistent with the pleadings. The owner here prescribed that when certain things were done by the agent they should constitute, at least, part of the consideration provided for in the contract, and so, those things having been done, the plaintiff

having advertised the property for sale and having taken prospective purchasers to the property, some of them having been taken to the property after the defendant had sold the property, unknown to the plaintiff, and the offer of the defendant having thereby become a binding promise as part of the partly executed contract, we are of the opinion that the plaintiff is entitled to recover the specific amount agreed upon.   The plaintiff having performed certain services under the contract, the defendant had no legal right to revoke this authority, and as the express terms of the contract fix the maximum loss with certainty, we see no reason why that amount should not be recovered.   It may be that if the agency had not been revoked that the plaintiff would not have been able to make a sale.   That, however, is mere conjecture, as it may well be that he would have been able to make a sale, particularly as he had within the time, but before he knew a sale had been made, prospective purchasers to whom he desired to show the property. The defendant being at fault, we do not think that he is entitled to the benefit of the more favorable conjecture or inference.

In the *Harrison* case, *supra,* the court said:

"Appellant having appointed appellee his agent to sell the property for a certain sum and agreed to pay him $200 for making the sale, and having given him one month in which to do it, and having before the time elapsed rescinded his contract and revoked the agency, we think appellee had the right to recover." Citing Mechem on Agency, section 968; *Gleason v. McKay,* 37 Ill. App. 464; *Rand v. Cronkrite,* 84 Ill. App. 208; *Lake Shore & M. S. Ry. Co. v. Richards,* 152 Ill. 59.

See, also, *Green v. Cole,* 127 Mo. 527; *Durkee v. Gunn,* 41 Kan. 496; *Hawley v. Smith,* 45 Ind. 183.

Considering what the evidence shows was actually done, that the property was sold for $65,000: that the

defendant deliberately broke his contract with the plaintiff, and permitted that to be done by another broker which he had bound himself—within a certain time—to permit the plaintiff to do, it does not now lie in the mouth of the defendant to say that although he had promised to pay the plaintiff a commission of 3 per cent of the price obtained, there is nothing due save for advertising and actual labor. To recognize that as sufficient would be to permit the defendant to profit by his own wrong.

It is urged for the defendant that the evidence showed a waiver of the agency; that the plaintiff's son had said: "That's all right, go ahead and sell." No such defense was alleged, and, moreover, the evidence does not show but what that conversation took place after the defendant had sold the property.

The defendant in his affidavit of merits set up as his only affirmative defense—the rest being useless denials—that he sold his property through his own efforts. That, however, the evidence disproves. The defendant himself admitted that Lapin was his own broker and that the sale was made through him.

In our judgment, the measure of damages was fixed by the agreement, and is 3 per cent on $65,000 which was the price actually obtained.

The judgment will be reversed and judgment entered here in favor of the plaintiff and against the defendant in the sum of $1,950, being 3 per cent on $65,000.

*Judgment reversed and judgment here.*
THOMSON, P. J., and O'CONNOR, J., concur.