George A. Nicholson, Plaintiff-Appellant, v. Robert N. Alderson and Helen M. Alderson, Defendants-Appellees.

Gen. No. 10,606.

Opinion filed July 3, 1952. Released for publication July 28, 1952.

GEORGE H. MORTON, of Lombard, for appellant.

DANIELS, BRYAN & ERLENBORN, of Elmhurst, for appellees. JOHN N. ERLENBORN, and WILLIAM J. BAUER, both of Elmhurst, of counsel.

MR. PRESIDING JUSTICE DOVE delivered the opinion of the court.

On March 28, 1951, Robert N. Alderson and his wife, Helen M. Alderson, executed an instrument designated as an exclusive listing agreement which was directed to George A. Nicholson, a licensed real estate broker. This instrument recited that in consideration of Nicholson's acceptance of the terms thereof and his promise to use his efforts to sell or exchange the real estate described therein and to advertise and show the property without expense to Mr. and Mrs. Alderson and to list the property with all associates of George A. Nicholson Real Estate and Insurance Service within

five days from the date of the instrument, Nicholson should have the exclusive right to sell the described property for a period of ninety days from the date of the instrument at a price of $10,500. The instrument further provided: "If any sale or exchange is made by you, by myself or by anyone else during this period, or if sold within ninety days after the termination of this agreement to anyone with whom any associate of George A. Nicholson Real Estate and Insurance Service has had negotiations, provided I have knowledge of such negotiations, I agree to pay the usual commission as established by the DuPage Board of Realtors, 5% on the full sale price, including any encumbrances." The instrument further provided for possession within sixty days after the date of closing any sale and also a provision about pro-rating the taxes and furnishing an Owner's Guarantee Policy showing a merchantable title. Mr. Nicholson noted his acceptance thereon by affixing his signature thereto.

On May 1, 1951, the attorneys representing Mr. and Mrs. Alderson wrote the following letter to Mr. Nicholson: "On behalf of our clients, Mr. and Mrs. Alderson, we are writing to advise you that the property at 334 South Grace Street, Lombard, Illinois, is being withdrawn from your listings as of this date. Since there are several reasons necessitating this action, with which you are fully familiar, it seems unnecessary to outline them in this letter. If you care to discuss this at all, please call me at the above office and kindly refrain from discussing this in any way with Mrs. Alderson."

On October 15, 1951, Nicholson filed in the circuit court of DuPage county his amended complaint against the Aldersons in which he alleged the execution and acceptance of the exclusive listing agreement dated March 28, 1951, and averred that he advertised and showed the premises to prospective customers and

listed the property with all his associates within five days of said agreement. The complaint then alleged that on May 15, 1951, the defendant sold the premises to Gilbert F. Urban for $10,500 and concluded that, by virtue of the provisions of the listing agreement, plaintiff became entitled to receive as a broker's commission five per cent of the sale price and demanded judgment for $525. The amended complaint was not verified but attached thereto was a copy of the listing agreement heretofore referred to.

Thereafter the defendants filed this motion for summary judgment on the ground that prior to the sale of the premises described in the complaint, the agency which existed between the parties by virtue of the agreement of March 28, 1951, had been revoked by the defendants by notice of termination of agency as set forth in the affidavit attached to and incorporated in said motion as defendants' Exhibit "A." This affidavit was executed by one of the attorneys for the defendants and sets forth a copy of the letter of May 1, 1951, to the plaintiff heretofore referred to, and avers that said letter was duly sent by him, at the direction of the defendants, to the plaintiff.

In opposition to the motion and supporting affidavit for summary judgment, the plaintiff filed a counter-affidavit which stated: "George A. Nicholson admits that he received a notice as set forth in Defendants' Exhibit A hereinabove referred to, and says that he considered this notice as an offer on the part of the defendants to terminate the contract then existing between the said George A. Nicholson and the defendants, Robert N. Alderson and Helen M. Alderson; that the plaintiff herein took no action to accept such offer to terminate or cancel the said contract then existing nor did.he at any time consider the contract terminated thereby, and that the said George A. Nicholson further

continued to perform the acts required of him under the aforesaid contract.''

Upon a hearing, the trial court sustained the motion of the defendants for summary judgment on the pleadings and on November 23, 1951, rendered an appropriate judgment in favor of the defendants and against the plaintiff for costs. On December 21, 1951, an unverified motion was filed by the plaintiff for an order vacating the judgment entered on November 23, 1951, and for leave to file a second amended complaint, for a rule on defendants to file an answer within twenty days, and ''for judgment in behalf of the plaintiff against the defendants upon the plaintiff's sworn complaint.'' This motion was heard and denied on January 30, 1952. To reverse the judgment rendered in bar of the action on November 23, 1951, and the denial of plaintiff's motion to vacate that judgment, plaintiff prosecutes this appeal.

It is insisted by counsel for appellant that the contract between the parties hereto was an executory contract and became irrevocable when plaintiff began to perform the acts required of him thereunder and that defendants, by revoking, or attempting to revoke, the contract before the expiration of the time limit set forth in the contract, became liable in damages for the amount plaintiff could have established would have been his had not defendants wrongfully revoked his authority. In support of this contention, counsel cite *Schwartz v. Akerlund*, 240 Ill. App. 480; *Hanlon v. Dunne*, 189 Ill. App. 123; *Harrison v. Augerson*, 115 Ill. App. 226; *Egyptian Seed Growers' Exchange v. Hollinger*, 238 Ill. App. 178; and 4 R. C. L. 252.

In *Schwartz v. Akerlund*, 240 Ill. App. 480, the defendant gave the plaintiff, a licensed real estate broker, an exclusive agency agreement authorizing him to sell the real estate referred to for $68,500 or any less sum which the defendant shall agree to accept and agreed to

pay a 3% commission on the price obtained. The agreement recited that the consideration therefor was that the plaintiff would advertise and show the property without any expense to the defendant and that the agreement was to continue for a period of one month from its date (August 3, 1923) ''and thereafter until this agreement is revoked by me (the defendant), in writing.'' Thereafter the plaintiff advertised the property a number of times in the Chicago Tribune and showed the property to numerous prospective purchasers. On August 24, 1923, the defendant, acting through another real estate broker, entered into an agreement to sell the property to one Goodkin for $65,000, and on October 11, 1923, the defendant and his wife conveyed the property to Goodkin. Thereafter, the plaintiff brought suit seeking to recover $2,055, being 3% of $68,500 mentioned in the agreement. The trial court said that the evidence disclosed that plaintiff accepted the agency and undertook to advertise and show the property without any expense to defendant and that twenty-one days after the exclusive agency was given by the defendant to the plaintiff and while that agreement remained outstanding and unrevoked by any writing, the defendant sold the property through another broker within the time covered by the exclusive agency, thereby voluntarily incapacitating himself from fulfilling his written offer. In reversing the judgment of the trial court in favor of the defendant, the court held that the written offer of the defendant and the things done by the plaintiff in pursuance of that offer and as a consideration therefor constituted a binding contract. And the fact that defendant sold the property through another broker within the time covered by the exclusive agency entitled the plaintiff to recover 3% on $65,000, which was the price actually obtained by the defendant upon the sale of the property to Goodkin.

*Hanlon v. Dunne,* 189 Ill. App. 123, is not reported in full. It does appear, however, that the defendant, owner of certain real estate, signed and addressed a letter to the plaintiff broker, dated September. 10, 1910, by which the defendant granted the plaintiff broker the exclusive right for thirty days from the date of the letter and thereafter, until the agreement was revoked in writing, to sell the premises mentioned in the letter. The letter then continued: ''In consideration of your services in endeavoring to sell said property I agree to pay you in case of a sale a commission of one hundred twenty dollars of the price obtained if a purchaser is procured during said period, by you or me or anyone else, upon any terms that I may accept.'' The record disclosed that immediately upon the receipt of the letter the plaintiff made efforts to sell the property, but in July 1911, the defendant sold the property, and thereafter the plaintiff brought suit and recovered a judgment for $120, the amount of the stated commission. In affirming the judgment, the Appellate Court stated that the questions whether the plaintiff had abandoned the contract and whether he was the procuring cause of the sale were controverted questions of fact upon which the verdict of the jury was conclusive.

In *Harrison v. Augerson,* 115 Ill. App. 226, the defendant, on January 31, 1903, authorized the plaintiff to sell certain property for $5,200, the agreement providing that the property would be left with the plaintiff for sale for one month and if the plaintiff was in any manner instrumental in selling the property, defendant agreed to pay him a commission of $200. The plaintiff shortly thereafter began negotiations for its sale to the Board of School Inspectors of the City of Peoria. On February 12, 1903, the defendant advised the plaintiff that he had decided to withdraw the property from sale and later, on the same day, the board

of school inspectors notified the plaintiff it had decided to take the property at the price and on the terms offered and on the following day sent the plaintiff a written acceptance. The plaintiff objected to defendant withdrawing the property from sale and advised the defendant about the board of school inspectors being a prospective purchaser. Defendant refused to execute a conveyance and thereafter the plaintiff brought suit to recover his commission of $200. In affirming the judgment of the lower court for that amount, this court held that the withdrawal of the property from the market by the defendant a few hours before an eligible purchaser had agreed with the plaintiff to accept the property and after the performance by the plaintiff of all the services that led to the proposal of the purchaser to take the property and during the period given the plaintiff to make the sale could not operate to prevent a recovery by the plaintiff of his commission. The court then said: "Appellant cites a number of authorities in support of the proposition that the agency created by the instrument in writing above set out, was revocable, and argues that appellant having the power to revoke it he necessarily would not be liable after doing so. He appears to have overlooked the distinction between the *power* and the *right* to revoke. It may well be that the principal has the power of revocation of such an agency as was there created, but it does not follow that after having agreed with appellee that he would not exercise the power for one month, that he had the *right* to revoke the agency within that time without incurring any liability in the matter."

In the *Schwartz* case, as in the instant case, an exclusive real estate brokerage contract was involved. In the instant case, the agency ceased to exist when appellant was apprised of the revocation of the powers conferred upon him by the contract. It is not contended

that appellant had anything to do with the sale to Mr. Urban, therefore, he would be entitled to recover as damages only the value of the service he had theretofore rendered, together with such disbursements as he may have made in his employer's behalf. In the *Schwartz* case, there was no revocation of the agency, but the contract was in full force and effect at the time the actual sale was made to Goodkin, and the court correctly held that the plaintiff, under those circumstances, was entitled to recover. So, also, in the *Hanlon* case, *supra,* there was no revocation of the agency prior to the sale of the premises, and in the *Harrison* case, *supra,* the court held that the withdrawal of the property from the market by its owner only a few hours before an eligible purchaser, found by the plaintiff, agreed to buy the property, could not operate to prevent a recovery by the plaintiff. The court then went on to distinguish between the power of revocation and right to do so. We have also examined the other case cited by appellant, *Egyptian Seed Growers' Exchange v. Hollinger,* 238 Ill. App. 178. The facts in all the cases relied upon by appellant are different from the facts in the instant case, and the holdings in none of them are decisive of the question presented by this record.

In *Pretzel v. Anderson,* 162 Ill. App. 538, it appeared that the defendant executed and delivered to the plaintiffs, on September 23, 1908, an instrument giving them the exclusive agency for the purchase privilege and sale of certain designated property at the price of $5,000 net until terminated by the defendant by giving ninety days' notice. The plaintiffs, licensed real estate brokers, offered the premises for sale to various prospective purchasers. On December 29, 1908, the plaintiffs received written notice from the defendant that their agency for the sale and purchase privilege of the property "is hereby terminated." On December 31, 1908, the plaintiffs secured a purchaser for the property who

signed a written contract to take the property at $5,200. The sale was not consummated, and thereafter the real estate brokers brought suit and in the trial court recovered judgment for $200. In reversing that judgment, the Appellate Court held the agency revocable and commented on the fact that the evidence showed that in the exercise of their business as real estate agents, the plaintiffs had spent some time and energy in offering the premises for sale to prospective customers. The court then said: "Had there been definitely proven a certain amount of money or energy expended in the attempt to sell before the notice of revocation was brought to plaintiffs' attention, they might have recovered on a quantum meruit, but they cannot use such indefinite proof to justify a judgment for compensation at an agreed figure for services performed after the revocation had been notified to them in negotiating a sale which would not be enforceable by the purchaser. Blackstone v. Buttermore, 53 Pa. St., 226.''

In *Goetz v. Ochala,* 180 Ill. App. 458, the owner of certain real estate signed and delivered to a real estate broker a written instrument which recited that in consideration of said broker accepting the agency for certain described real estate, the owner gave him the exclusive right to sell the property from the date of the instrument (November, 1907) to January 1st, 1909, and agreed to pay him as commission whatever sum he may get for said property above the sum of $9,000, and in the event the property was sold by anyone else during the named period, the owner agreed to pay the broker the regular commission prescribed by the Chicago Real Estate Board. At the time this instrument was executed and delivered to the real estate broker, proceedings to condemn this land had been instituted by the Chicago and N. W. R. Company and the owner had been served with process. The broker, who was

also an attorney, entered the appearance of the owner in the condemnation proceeding and began negotiations to sell the premises to the Railroad Company for $10,000 but was unable to secure that price. In 1908, the owner sold the property to the Railroad Company for $8,000, and thereafter the broker brought suit to recover a commission of $220. In affirming a judgment for the defendant, the court stated that there was no evidence tending to prove the value of the services rendered on a *quantum meruit* and no recovery sought thereon. The court cited Mechem on Agency, sec. 205, to the effect that where one is given authority to sell the lands or other property of another and is to have a certain commission or share out of the proceeds for making the sale, the authority may be revoked at the will of the principal, even though in terms it was declared to be exclusive or irrevocable. The court held that the agency, although exclusive, was not one coupled with an interest but was a revocable one.

In 4 R. C. L., Title Brokers, sec. 8, p. 252–3, it is said that the duration of a broker's agency ordinarily continues until the object of the appointment is attained or the period of its duration expires and that such an agency is liable to be prematurely terminated at any time either by operation of law or as a result of the employer's revocation thereof, for as a broker has no interest in the property relative to which he negotiates but merely in the commission to be earned upon its transfer, his agency is not one coupled with an interest within the meaning of the rule that makes the authority of an agent irrevocable in such a case. A broker's employment may be terminated by the principal revoking the authority granted at any time and under any circumstances. "Although the employer has not an absolute right to revoke, in the sense that a revocation could never be wrongful or render him answerable in damages, still his power to revoke and thus ter-

minate the broker's agency is absolute and undisputed, notwithstanding that by the terms of their agreement the employment was to continue for a definite period of time, and the authority conferred was declared to be irrevocable. In order for a revocation of authority to be effective, notice thereof must be given to the broker.'' In the following section of the same article (4 R. C. L. pp. 253, 4, 5) it is said: ''Although an employer has absolute power to revoke the authority of his broker, he may not always do so rightfully. . . . Where the principal has entered into a binding contract to continue the employment for a certain length of time, he cannot revoke the broker's agency, unless it be for misconduct, without rendering himself legally liable for such damages as are the proximate result of his act. While the law recognizes his power to revoke the broker's authority even under such circumstances, it does not recognize his right to do so, for it results in a repudiation of his contractual obligations. . . . Where by revoking the broker's authority, the latter is entitled to recover as damages, not only the value of such services as he has already rendered together with such disbursements as he has made in his employer's behalf, but also such prospective profits as he can reasonably establish would have been his but for the wrongful revocation of his authority.''

 Under the authorities the agreement involved in this proceeding is not one coupled with an interest and it was revocable at the will of the principals. In appellant's counter-affidavit in opposition to appellees' motion for judgment on the pleadings, appellant acknowledged the receipt of the instrument of May 1, 1951, which he says he considered as an offer on the part of appellees to terminate the listing. This letter of May 1, 1951, stated that the property of appellees ''is being withdrawn from your listings as of this

date." It was not an offer to do anything. Its receipt by appellant terminated his authority to sell appellees' property.

■ Appellant sought by his amended complaint, filed on October 15, 1951, to recover a broker's commission of 5% of the sale price of the property sold by appellees to Urban on May 15, 1951, fifteen days after appellant had received notice that his connection with that property had terminated. Had appellant desired to recover a certain amount of money for expense incurred or for money expended by him in an attempt to sell this property before his agency agreement was terminated, he might have done so on a *quantum meruit* as suggested in *Pretzel v. Anderson,* 162 Ill. App. 538, 545, but that is not what appellant sought or is seeking to do by his instant complaint. See also *Waterman v. Boltinghouse,* 82 Cal. 659, 23 Pac. 195.

Under the facts disclosed by this record and the cited authorities, the trial court correctly rendered the judgment appealed from and did not err in refusing, upon a mere request, unsupported by any proposed pleading or by any affidavit or showing of any kind, to set aside that judgment upon motion made twenty-eight days after its rendition.

*Judgment affirmed.*