The M. A. Felman Co., an Illinois Corporation, Plaintiff-Appellee, v. WJOL, Inc., an Illinois Corporation, Defendant-Appellant.

Gen. No. 68–14.

Third District.

December 23, 1968.

Gray, Thomas, Wallace & Feehan, of Joliet, for appellant.

Sonnenschein, Levinson, Carlin, Nath & Rosenthal, of Chicago, and Herschbach, Tracy, Johnson & Wojtak, of Joliet, for appellee.

ALLOY, P. J.

This is an appeal from a judgment of the Circuit Court of Will County in favor of plaintiff, the M. A. Felman Co., as against defendant, WJOL, Inc., in the sum of $51,-962.19. The judgment followed a finding (pursuant to a motion for summary judgment) by the Circuit Court of Will County that plaintiff was entitled to such damages as a result of defendant's breach of contract. The record discloses that plaintiff M. A. Felman Co. operated the Boston Store in Joliet, Illinois. Mr. A. J. Felman was the principal owner and chief executive of the plaintiff corporation prior to June, 1932. He was also the sole owner of all stock of WCLS, Inc., which then operated a Joliet radio station. On June 21, 1932, Felman sold all the stock in the radio station corporation to R. W. Hoffman, for a stated consideration of $10 and the promise of certain

68

free broadcasting time "so long as said station WCLS is operated as a radio broadcasting station." The free broadcasting time was to consist of 120 minutes each weekday and 90 minutes on Sunday. This original agreement also was conditioned so that no more than three announcements would be made in each 15-minute period. An amendment was made of this agreement on August 9, 1937, pursuant to which $5,000 was paid to Felman. The free broadcasting time was reduced from 13½ hours a week to 5½ hours a week with such free time to continue "so long as station WCLS is operated." The corporate name of WCLS was later changed to Joliet Broadcasting Co., with the station letters WJOL. The shareholders of Joliet Broadcasting Co. conveyed all interest in their stock to WJOL, Inc., which continued to operate station WJOL. Felman assigned his contract rights to the plaintiff corporation (the M. A. Felman Co.) in 1945 for a period of ten years, and subsequently renewed this assignment by two succeeding instruments, the last of which conveyed to the plaintiff corporation all right, title and interest under the contract.

In 1945 the radio station sought to renew its license but was given only a temporary permit due to the fact that the Federal Communications Commission (hereinafter referred to as FCC) was then in the process of working on regulations with regard to types of contracts which allowed for free broadcasting time. On April 1, 1949, the FCC adopted Rule 3.109, which provided in substance as follows:

> *"Special rules relating to contracts providing for reservation of time upon sale of a station.* (a) No . . . renewal of license . . . shall be granted . . . to a . . . broadcast station which has a contract . . . (under) which . . . transferor retains any right . . . to use the facilities of the station for any period whatsoever.

"(b) In the case of . . . transfer . . . before February 15, 1949 . . . the Commission . . . (may issue) a license despite . . . such contract . . . if . . . within 6 months from . . . this rule. (The contract is modified to contain at least the following provisions:)

". . .

"3. A prohibition against the resale or reassignment of any of the broadcast time reserved by such modified contract.

"4. An express negation of any right with respect to reversion or assignment of license.

"5. An express provision setting forth a definite expiration date of the contract . . . Such expiration date shall not extend beyond February 15, 1964 . . .

"6. An express provision giving to the licensee the right to terminate the contract . . . for substantial cause . . . upon the payment of a lump sum . . . ."

Prior to this time, in 1949, plaintiff sought to enjoin enforcement of the FCC rule on the ground that it deprived plaintiff of property without due process of law. This litigation terminated in the United States Supreme Court. The only issue there was apparently whether the FCC had the power to issue its rules. There was no determination of the effect of the rules as between plaintiff and defendant.

The plaintiff contended at FCC hearings that it would be clearly unjust if in the course of determining standards which would govern the station's broadcasts, the FCC would attempt to invalidate the Felman contract which had been entered into in good faith and had been fully disclosed to the FCC and had been fully performed by Felman. The FCC Chairman indicated that the question of contract liability was not involved. It was likewise

70

clearly indicated that the Commission did not in any manner attempt to determine whether or not there would be a liability to Felman in the event the Commission regulation and decision became final. The FCC Chairman stated that this was a wholly separate issue which should be dealt with as a civil matter. When the station license was up for renewal in 1950, the defendant radio station representatives told the FCC that they had not yet reached an agreement with plaintiff, but they stated to the FCC that they would not recognize any obligation under this contract of August 9, 1937, which was not consistent with the provisions of said Section 3.109. The FCC renewed the license of WJOL and such license was continued from that time on by the FCC. The radio station continued to furnish plaintiff program and advertising time (as it had done for years) until February 15, 1964. The station advised the plaintiff in writing on February 10, 1964, that it would not operate under the contract after February 15, 1964, and that after such date it would refuse to give broadcasting announcements delivered to the station by plaintiff under the terms of the contract.

Action for breach of contract was filed by plaintiff on April 23, 1964, seeking damages of $14,741 for each year subsequent to the time of the breach of the contract. The facts were undisputed and the trial judge granted a motion for summary judgment in favor of the plaintiff. Judgment was entered for the plaintiff as against defendant with damages set at $51,962.19. The judgment covered damages from February 15, 1964, through August 24, 1967. In the process of determination of this cause, the trial court stated "The action of the FCC under its rule-making power does not affect the validity of the contract between licensee and third party. This is basic. The rights of the parties under the contract are to be determined by the law of Illinois. I cannot see how the doctrine of impossibility of performance or commercial

71

frustration can be applied here. Felman has performed completely and nothing more by him needs to be done. Performance by defendant is not rendered illegal or contrary to public policy. Clearly, the payment of damages, or the money equivalent of the thing to be delivered, is possible, is legal, and does not offend the regulatory agency." The present owners of WJOL purchased their stock in November of 1954. The damages referred to were predicated upon damages of .$14,741 for each year subsequent to the breach based upon the value of the broadcasting time during each of such years.

On appeal in this Court, defendant radio station corporation asserts (1) impossibility of performance of the contract resulted solely from legal action of the governmental agency and presented an effective defense to an action based upon its breach; (2) the obligations alleged to have been assumed under the Felman contract contemplate possible termination by the very contract terms, and are subject to the regulations of the FCC; (3) the suit based upon an alleged breach of the contract of August 9, 1937, is barred by the Statute of Limitations; (4) that there was no proper legal basis for the suit being brought by the plaintiff, M. A. Felman Co., or against defendant, WJOL, Inc.; (5) that the conduct of the parties before and after the order of the FCC renewing the broadcasting license coupled with the combination of attending circumstances brought into being a new contract implied in law or implied in fact; and (6) that the damages awarded below were improper and illegal.

█ █ On the question of the doctrine of impossibility or commercial frustration as being a basis for absolving defendant completely from any liability to pay damages, it would be well to analyze the doctrine generally. In Illinois and other states, when performance of a contract becomes impossible because governmental laws or regulations make such performance illegal, nonperformance may be excused. This rule assumes that the pos-

72

sibility of such illegality was not provided for in the contract or contemplated by the parties when they entered into an agreement. Also, such illegality must not have come about because of any action or nonaction on part of either of the parties to the contract. Some early cases on this issue involved prohibition cases where property was leased for tax purposes only and it became illegal to operate a tavern. In such situations, nonperformance by the lessee of the lease was excused (Levy v. Johnston & Hunt, 224 Ill App 300). Similarly, where a contract contemplated the continued existence of a particular person, thing or condition, and later the person died or the thing was destroyed, or the condition was changed in a way not contemplated by either party, the courts of this State recognized that performance may be excused (First Nat. Bank of Danville v. Taylor, 329 Ill App 49, 67 NE2d 306; O'Hern v. DeLong, 298 Ill App 375, 19 NE2d 214).

In the cases referred to, such as the prohibition cases, since the lessee could not continue to operate a tavern because it was illegal, the lessee was excused from performance. In Leonard v. Autocar Sales & Service Co., 392 Ill 182, 64 NE2d 477, the defendant, a lessee of certain premises, argued that his obligation to pay rent had been terminated because the government acquired use of his premises by condemnation. The court noted that the tenant was entitled to receive compensation from the government for the value of the leasehold taken. Therefore, "there is no hardship or injustice in holding it to the payment of the rent which is the consideration for which the term was granted" (page 191). In the case before us the broadcasting time formerly made available to plaintiff was, upon being denied to plaintiff, made available for sale to others. Damages awarded to plaintiff simply represent the fair value of such broadcasting time, so far as the record is concerned, and merely reflects the additional income which defendant was able

73

to obtain as a result of its failure to perform the agreement in consequence of its adherence to the FCC regulation. The application of the impossibility-frustration doctrine (as an excuse for nonperformance as was the situation of the tenant in Leonard v. Autocar Sales & Service Co., supra) would confer an additional benefit upon the defendant seeking to invoke the doctrine. This would result in an inequitable situation as between the parties to the contract. Neither party, applying equitable principles, should benefit at the expense of the other. Since defendant cannot render performance in the form in which it was called for by the contract, it should not be relieved of all obligations, but should respond in damages which would place both parties in substantially the same position as if there had been no breach.

We note that the FCC itself specifically recognized that the regulation did not abrogate the contract or nullify plaintiff's rights or forbid payment of compensation to plaintiff. The Felman contract had reserved broadcast time for the purpose of advertising. The basic purpose would still be achieved, not by granting free advertising time contrary to Rule 3.109, but by payment of damages so that such advertising time could be purchased with such payment. To apply the impossibility-frustration doctrine so as to relieve defendant of any obligation to plaintiff (even though plaintiff has completely performed), would make Rule 3.109 effective for a purpose which it was not intended to have and confer upon the FCC the power to affect or destroy private contract rights.

■ ■ The basic consideration is whether under Illinois law, defendant's inability to perform would defeat plaintiff's right to recover compensation by reason of such inability to perform. We have noted in Leonard v. Autocar Sales & Service Co., supra, and in Warshawsky v. American Automotive Products Co., 12 Ill App2d 178, 188, 138 NE2d 816, that inability to perform contractual

obligations does not amount to a "legal impossibility" which excuses the promissor of all liability. The parties hereto agree that the FCC regulation did not in any manner make the contract illegal. The trial court correctly summarized the rules when it stated that payment of damages would in no way contravene public policy. So far as the record in this case is concerned, it is apparent that the FCC anticipated that there would be actions or agreements resulting in allowance of damages for failure of performance on part of the radio station. As stated in Phelps v. School Dist. No. 109, 302 Ill 193, at 197–8, 134 NE 312:

> "When made, the contract was lawful and valid. Its performance was rendered impossible by the subsequent happening of a contingency which could not be foreseen or known when the contract was made, and the rule is that if one of the parties desires not to be bound in the event of the happening of such a contingency he must so provide in the contract. The general doctrine is well settled, that when a party contracts to do a thing without qualification, performance is not excused because by inevitable accident or other contingency not foreseen it becomes impossible for him to do that which he agreed to do."

In Schiller Piano Co. v. Illinois Northern Utilities Co., 288 Ill 580, 123 NE 631, the Supreme Court of this State refused to invoke a rule that adoption of the Public Utilities Act destroyed plaintiff's contract rights. Plaintiff Piano Co. owned a manufacturing plant adjacent to a dam and owned 117 horsepower created by the dam. The horsepower was conveyed to a power company in consideration of the power company agreement to furnish electric power, perpetually, free of charge. As in the case before us, the plaintiff had completely performed its side of the bargain. The amount of electricity to be fur-

nished was subsequently adjusted and thereafter the utility company, following passage of the Public Utilities Act, refused to perform stating that the contract had become unlawful. The Supreme Court concluded that the Public Utilities Act did not make performance of the contract unlawful and did not nullify plaintiff's rights. The court stated that it would be inequitable to apply the impossibility-frustration doctrine against a party who has fully performed and that the statute would not be construed to cause such result. The court stated (at page 587):

> "It jars unpleasantly on one's sense of justice to say the effect of the statute was to destroy or confiscate appellant's property for the benefit and advantage of appellee . . . On the contrary, it would offend against good morals and common honesty, now that appellant has conveyed its property to appellee, to give the statute the effect of having relieved appellee of the obligation to pay for it."

Defendant cites the case of Hite v. Cincinnati, I. & W. R. Co., 284 Ill 297, 119 NE 904, in support of its contention. In that case, the grantors in a deed to the railroad made in 1880 provided that the railroad would allow free passage to the grantor and his son during their lives. In 1913, the Commission ruled that such transportation was illegal. An action for ejectment was instituted and the court denied ejectment stating (at page 299):

> "In such a contract as this, if the condition has been performed the obligation necessarily is discharged, and it is also discharged if instead of the condition having been performed its performance has been prevented by the act of law."

The court then stated, to show that the grantor did actually receive the entire consideration for the deed (at page 300):

"Appellant dealt with the railroad company knowing that it was a public utility and that any contract made with it relating to its service was subject to alteration or abrogation by the State in its exercise of that police power."

It is notable that in the Hite case, monetary damages of some type were not sought but the action was actually for ejectment, so the question of damages, apparently, was not considered in that case. In the later Schiller Piano Co. case, to which we have referred, plaintiff also did not attempt to obtain damages, but the court there recognized the inequalities which could result if future performance was excused by application of the impossibility doctrine where no monetary or other adjustment was made between the parties.

 Defendant's contention that the Felman contract was terminated by its own terms when Rule 3.109 was adopted or that if it did not terminate it was replaced by an implied contract which in effect deprived plaintiff of his rights under the existing agreement is not justified on the record in this cause. If WJOL had ceased operation or lost its license then, of course, the Felman contract rights would have terminated. The radio station, however, had at all times remained in operation and the advertising time reserved under the contract continued to have a value. The FCC did not destroy the value of defendant's radio station and it did not purport to render the plaintiff's contract worthless. The fact that the contract and assignment to plaintiff both refer to rules and regulations of the FCC did not show that it was the intention of the parties that the contract obligations would be terminated in the event of the adoption of limiting FCC regulations. Regulations referred to in the contract, on the basis of the record, were those relating to standards governing the propriety of material to be broadcast. There is nothing in the record which would justify the

conclusion that the contract ceased to exist at the time of the adoption of the regulation in 1949. The circumstance that defendant continued to fulfill its obligations under the contract until 1964 indicated that both parties considered that the contract was in full force and effect and not terminated by virtue of the regulation.

Similarly, we find no substance in the contention that the contract was amended by implication to contain the terms recommended by the FCC. The parties entered into negotiations with reference to the possible modification of the contract following the adoption of the regulation but could come to no agreement as between them. Negotiations were entered into for the express purpose of settlement and without prejudice to any future claim. No contract could be implied in fact as against an express declaration of a party, nor could there be any basis for construing a contract implied in law, in support of defendant's theory of nonliability.

■ The record shows that continuously, until February 1964, the radio station provided time to plaintiff in compliance with the terms of the contract. The action in the instant case was filed on April 23, 1964, approximately nine weeks after defendant's first act of nonperformance. We, therefore, find no merit in the contention of defendant that the ten year statute of limitations had run when the first breach in fact occurred on February 16, 1964. The doctrine of anticipatory breach certainly would not be applicable where plaintiff has completely performed and defendant has not (Guaranty Bank & Trust Co. v. Reyna, 51 Ill App2d 412, 424, 201 NE2d 144).

■ ■ As we noted in the statement of facts, the original contract was executed by WCLS, Inc., which thereafter changed its name to Joliet Broadcasting Co. and the defendant, WJOL, Inc., succeeded to the assets of Joliet Broadcasting Co. We do not believe that WJOL, Inc., by reason of such acquisition acquired the assets

free of liabilities. It does not appear that WJOL contended that it took such assets free of liabilities since it performed under the contract until 1964. Similarly, on the record, all the rights under the contract had been assigned to the plaintiff and plaintiff was clearly entitled to maintain the present action.

The issue which has given us the most concern is the question as to whether the damages awarded in the court below were proper. Such damages were measured by the actual value of the advertising time, and, in effect, simply gave plaintiff the equivalent of the value of the advertising time which was the basic consideration for the transfer of the radio station. A further contention is made that the amount to be paid during each year should have been reduced by $5,000 a year. This is based on the fact that Mr. Felman was to receive $5,000 per year as consideration for his assignment of the contract to plaintiff-corporation so long as such radio time was furnished. If that corporation owes Felman $5,000, then Felman's right to recover that amount from the corporation is something which would be litigated or determined entirely between Mr. Felman and the plaintiff corporation. Defendant's liability would not be affected thereby.

On the basis of the record before us, it appears that neither party to this action did in fact suffer loss on the basis of the judgment rendered in the trial court. The damages awarded to the plaintiff did not impose a penalty on defendant. Defendant simply is paying for the radio time which presumably it is selling for the exact amount which it pays to plaintiff. Our attention was not directed to any other factors which would make such payment inequitable from standpoint of the defendant. Adoption of defendant's contention, as an extension of the impossibility-frustration doctrine as an excuse for nonperformance, would unjustly enrich defendant and deprive plaintiff of his property without compensation.

79

Since we find no reversible error in the record, the judgment of the Circuit Court of Will County will, therefore, be affirmed.

Affirmed.

STOUDER and SCHEINEMAN, JJ., concur.