F. E. DUFFY *et al.*, Plaintiffs-Appellees, *v.* JACQUE SETCHELL *et al.*, Defendants-Appellants.—(CHARLES F. BROWN, d/b/a Charles F. Brown Real Estate Agency, Third-party Defendant-Appellant.)

Second District (2nd Division)   Nos. 75-168, 75-169 cons.

Opinion filed May 13, 1976.

Henry S. Dixon, of Dixon, Devine, Ray & Morin, of Dixon, and Christ T. Troupis, of Mendota, for appellants.

E. M. Sullivan, of Amboy, and Craig E. McGuire, of Polo, for appellees.

Mr. JUSTICE DIXON delivered the opinion of the court:

F. E. Duffy brought suit in the Circuit Court of Lee County, Illinois, against Jacque Setchell for a real estate broker's commission. Duffy alleged that he had a listing contract with Setchell which gave him an exclusive right to sell Setchell's farm, and that a sale had been made by Setchell through another broker, Charles F. Brown. Setchell in his reply denied that Duffy was entitled to a commission, and alleged that the contract of sale procured through Brown was voidable and had been rescinded. Setchell filed a third-party complaint against Brown, alleging that no valid sale of his farm had been made, and he was not liable to either Duffy or Brown for a commission, because Brown had acted as dual agent for buyer and seller. Lois D. White, with whom Setchell and his wife had entered into the challenged contract for the procuring of which the two brokers both wanted fees, brought suit against the Setchells for specific performance. The cases were consolidated for trial, and a bench trial ensued. After hearing testimony, the trial court granted Duffy his commission, denied a commission to Brown, and decreed specific performance of White's contract. Brown and the Setchells have appealed.

White was the owner of a farm which adjoined the Setchells' farm. White's nephew was the tenant on her farm. In the fall of 1972 White talked with her nephew about the possibility of her purchasing another farm in the area. At Christmas time in 1972 they again discussed the possibility of her buying another farm, and the Setchells' farm was mentioned. White's nephew told her he knew a realtor named Charlie Brown. White asked her nephew to get in contact with Brown and ask him to look into the possibility of her purchasing the Setchells' farm.

White's nephew called Brown, and shortly afterwards the two of them went to see White at her home, in January of 1973. They discussed the terms on which a purchase of the Setchells' farm might be arranged. Brown said he had already gone to see Mr. Setchell, after hearing from the nephew, but he did not indicate in any way that he represented the Setchells. White asked Brown to get in touch with the Setchells on her behalf, to see about her buying the land. She told Brown she would pay $800 an acre, but did not think she had made the price definite. She considered that Brown was her agent to go to talk to the Setchells. "Through Mr. Brown," she subsequently testified, "I was going to Mr. Setchell."

Brown thereafter went to see the Setchells a number of times to discuss the sale of their farm, and also kept in touch with White. The Setchells and White did not deal with each other directly. Brown had White sign a proposed contract, dated February 5, 1973, and he took it to the Setchells

but did not show it to them because their thinking on the terms of sale had changed. Brown did not tell the Setchells that he had come to them pursuant to the suggesion of White's nephew, or disclose that it was White who was interested in buying their farm. Brown did not mention White's name to the Setchells until February 17, 1973, when the contract in its final form was ready for execution, because he did not until then have their signature on a listing agreement.

Brown obtained the agreement of the Setchells to reduce their price from $100,000 to $98,000, which for approximately 124 acres was $790.32 per acre. The time of closing was also deferred one year, to March 1, 1974, the Setchells to have the crops and the use of the land for the additional year. These changes he discussed with White, and she agreed to the later closing date. White signed the contract as it was prepared in its final form, on February 17, 1973, and gave Brown her check for the down payment, $7,500. Brown then met the Setchells at his office, had them execute the contract, and gave them White's check.

Brown also told the Setchells, in the course of the negotiations, that he would try to find another farm for them to acquire, so the disposition of their farm for tax purposes could be made to assume the form of an exchange rather than a sale. The contract in its final form allowed this to be done, requiring the cooperation of White but imposing any extra legal or closing costs on the Setchells. Brown also said the deal wasn't good until the check for the down payment was cashed, although he did not direct them to hold the check until exchange property was found.

In 1971, long before Brown went to see the Setchells to discuss the sale of their farm, Mr. Setchell had executed a listing agreement with Duffy. This expired, and was renewed January 15, 1973. It was an exclusive listing agreement, giving Duffy the exclusive right to sell the listed property. Duffy heard on February 3, 1973, that White was interested in buying a farm, and called White on February 4 for an appointment for the next day. Later on February 4 a message was left for Duffy cancelling the appointment. Duffy called White on February 6, and was told she had bought the farm on February 5. Duffy then called Setchell, who said he didn't know anything about a sale of his property. Later Duffy called Setchell and said he wanted the commission to which he was entitled by reason of his having the exclusive right to sell.

Setchell and his wife both signed a listing agreement with Brown on February 17, 1973, at the same time as they signed the agreement for sale of their property to White and received White's check for the down payment. The Setchells and their son testified at the trial that they had previously talked to Brown about their dealings with Duffy and had shown Brown Duffy's listing agreement. Brown testified that he thought he had been shown an expired one, that he did not know it had been

renewed, and that he did not at first realize it was an exclusive listing. Upon learning that it was in fact an exclusive listing agreement and also that Mrs. Setchell had not signed it, Brown told Setchell to call an attorney before signing Brown's listing agreement, and Setchell did so.

Setchell called on White at her home on November 8, 1973, and gave back to her the check she had written for the down payment. Setchell told her it was too much expense, for him to pay two broker's fees. He also said that Brown had not held up his end of the deal, since no farm had been located which was satisfactory for trading purposes. White accepted the check from Setchell because, she testified, it was apparent to her that he had been drinking and she was frightened.

After Setchell had returned the check for $7,500 and had told White the deal was off, White and her attorney made efforts to complete the purchase, and on or about March 1, 1974, through Brown, tendered the remainder due, $90,500. Brown offered Setchell the check for $90,500 in exchange for a warranty deed, but Setchell refused to accept the check which Brown had brought to him and said he was not going through with the sale. The litigation we have described then followed.

We have carefully reviewed the testimony given at the hearing, and we believe the evidence clearly establishes that Brown was acting as agent for White as well as for the Setchells. White, through her nephew, sought out Brown to approach the Setchells on her behalf; White asked Brown to find out from the Setchells whether she could purchase their farm at a price not to exceed $800 per acre; Brown had not had dealings with the Setchells before White's nephew spoke to him about her interest in the Setchells' farm; White considered Brown her agent to go to the Setchells; Brown went to see them as White had requested; Brown negotiated the terms of sale and got the parties to agree upon a price which was less than the Setchells at first wanted and a little less than White originally said she would pay; and Brown's function was not, as a mere middleman, to bring the parties together, but to see that they reached agreement on terms. Furthermore, it is undisputed that Brown did not disclose to the Setchells that White's nephew had called him before he ever had got in touch with them, nor that White had asked him to approach them on her behalf, nor that he was acting as agent for White.

■■■ If a buyer requests a broker's assistance in obtaining a particular piece of property, the broker may be held to be the buyer's agent for that transaction, even though the broker is paid nothing by the buyer and it is expected that he will receive a fee from the seller. (*Hyman v. Burmeister*, 216 Ill. App. 98, 100-01.) If the broker then becomes the seller's agent as well, the duties he will owe the two parties will be conflicting, and he will not be able to act for both without the knowledge and consent of both of them. (3 Am. Jur. 2d *Agency* §233 (1962).) A contract negotiated by an

agent acting for both parties is voidable by a principal who did not have knowledge of the double agency (Annot., 48 A.L.R. 917 (1927)), and it makes no difference that the principal was not in fact injured, or that the agent intended no wrong, or that the other party acted in good faith. (*Chicago Title & Trust Co. v. Schwartz*, 339 Ill. 184, 194.) Specific performance of a contract procured by a broker who acted for both parties without full disclosure will not be granted. *Wloczewski v. Kozlowski*, 395 Ill. 402, 407-08.

■■■ White is not entitled to specific performance, therefore, Brown having acted as agent for both parties without the knowledge of the Setchells. Brown is not entitled to a commission from the Setchells, moreover, because a broker who has acted for both buyer and seller without the full knowledge of both is not allowed to recover compensation from either. (*Bunn v. Keach*, 214 Ill. 259, 265; Annot., 80 A.L.R. 1075 (1932).) Duffy is not entitled to a commission under his exclusive listing agreement (see *Flynn v. La Salle National Bank*, 9 Ill. 2d 129, 139; *Wozniak v. Siegle*, 226 Ill. App. 619, 621-23), because the Setchells had the right to rescind and elected to do so, and therefore no sale was consummated. Accordingly the trial court's decree of specific performance is reversed, the judgment against Brown is affirmed, and the judgment in favor of Duffy is reversed.

75-168—Affirmed in part and reversed in part.

75-169—Reversed.

T. J. MORAN, P. J., and RECHENMACHER, J., concur.