ROLAND E. CASATI, Plaintiff-Appellee, *v.* AERO MARINE MANAGEMENT CO., INC., *et al.*, Defendants-Appellants.

First District (2nd Division)    No. 79-1049

Opinion filed November 12, 1980.—Supplemental opinion filed on denial of rehearing January 27, 1981.*

* A supplemental opinion was filed on denial of rehearing. That opinion is found at 90 Ill. App. 3d 1149.

Joseph B. Lederleitner, of Pretzel, Stouffer, Nolan & Rooney, of Chicago, for appellants.

Martin, Craig, Chester & Sonnenschein, of Chicago (Edward Atlas, of counsel), for appellee.

Mr. JUSTICE DOWNING delivered the opinion of the court:

Plaintiff, Roland E. Casati, originally brought suit to recover a broker's commission of $46,000 from defendant, Aero Marine Management Co., Inc. (Aero), his former employer. After a judgment was entered in Casati's favor, Aero appealed. (See *Casati v. Aero Marine Management Co.* (1976), 43 Ill. App. 3d 1, 356 N.E.2d 826 (*Casati* I).) In *Casati* I, this court held plaintiff submitted to Aero a prospective purchaser's "offer to negotiate" for the purchase of Aero's building. That offer did not satisfy the unconditional offer requirement of Casati's agreement with Aero. We, therefore, reversed Casati's judgment. We also held, however, that remand of the cause was appropriate because the trial court did not issue findings on Casati's inartfully drawn alternate count sounding in breach of contract by anticipatory repudiation. On remand the trial court, consistent with suggestions in *Casati* I, permitted plaintiff to amend his complaint. After the trial judge considered stipulations of fact, prior testimony, exhibits, and arguments of counsel, he found that Aero anticipatorily breached the broker's agreement with Casati, and, accordingly, that Casati was entitled to damages of $46,000, plus interest.

Aero now raises the following issues for our review: (1) whether Casati's amended counts set forth new theories of recovery barred by operation of either the doctrine of *res judicata* or of law of the case; (2) whether Casati's exclusive agency was revocable at will and, thus, insufficient to support recovery under the legal theory of anticipatory breach; and (3) whether the cause based upon anticipatory breach is barred by operation of the doctrine of election of remedies.

Prior to the trial on Casati's remanded cause, the parties stipulated, *inter alia*, that the trial judge could consider as fact the entire record, if consistent with the statement of facts contained in *Casati* I, and all offers of proof made by Casati at the first trial. Those facts indicate an agreement was created on May 29, 1968, between Heritage Insurance Company of America (Heritage) and plaintiff to supervise the construction of the Heritage Building (Building) in Lincolnwood, Illinois, to solicit prospective tenants, and solicit a buyer for the Building. The agreement provided, in pertinent part, that if plaintiff "* * * shall have submitted an unconditional offer in writing with not less than forty-eight hours to accept, which offer shall be sufficient to allow a profit to Heritage of not less than $350,000 before closing costs, pro-rations and the bonus agreed to be paid to [plaintiff], then [he] shall be deemed to have earned the sale bonus herein agreed to be paid to [him] whether such offer is accepted or not * * *." Although the Building was sold several months later to Aero, Heritage's parent company, plaintiff waived any rights to a bonus deriving from this sale in exchange for Aero's continuing to employ him under the May 29 agreement. Plaintiff solicited prospective buyers including La Salle National Insurance Company (La Salle).

On January 16, 1969, La Salle submitted an offer on the Building. Aero rejected the offer purportedly because it was not unconditional. Casati unsuccessfully demanded a bonus and then brought suit.

A major portion of the first trial was devoted to establishing the completion date of the Building and its cost on that date. The president of Aero, Vincent Giacinto, wrote a letter to the mortgagee of the Building wherein he asserted the Building was completed, including office space, on October 31, 1969. The cost of the Building on that date was $943,457.51, including land. Additional work to tenant specifications was completed thereafter and increased the total cost of the Building to $1,049,917.22, effective September 30, 1970.

The trial court found the La Salle offer to Aero sufficient to satisfy Casati's bonus contract. This court reversed that finding because it concluded the offer included terms which reduced it to an offer to negotiate. We then remanded the case for a determination on Casati's alternate theory of recovery, anticipatory repudiation, noting in our supplemental opinion that an amended version of Casati's cause would "* * * enable the parties to put in issue for the trial court the matter of

what are the essential elements of a cause of action for anticipatory breach." *Casati* I, 43 Ill. App. 3d 1, 11.

Casati thereafter filed amendments to his complaint. The instant amended complaint contains two counts which allege substantially the same preliminary facts as did the original complaint. Casati alleges, *inter alia*, that he "fully performed" all that was required of him under the May 29, 1968, agreement; that Aero anticipatorily repudiated the agreement by taking the property off the market; that the agreement was supported by consideration from plaintiff to Aero in that Casati agreed to supervise construction of the Building and solicit prospective tenants for it; and that Aero's repudiation resulted in lost profits to Casati. Additionally, Casati's second count alleged that on and after January 22, 1969, La Salle was ready, willing and able to submit an unconditional offer to Aero within the meaning of the agreement to purchase the property at the price of $1,350,000 in cash, but that Aero was not willing to sell the property.

The trial court issued its findings and conclusions in a memorandum opinion. It found that Aero adopted a resolution to remove the property from the market, that Aero's attorney advised the Board that the resolution should not be recorded in the minutes because it could be used as an admission against Aero in the event of a lawsuit by Casati, and the resolution was, accordingly, not recorded. The court also found the property was, in fact, removed from the market on January 22, 1969, even though approximately three months of the contract period remained during which Casati could produce an unconditional buyer entitling him to the bonus. The trial court then concluded that the contract between Casati and Aero was bilateral, supported by consideration, and not revocable at will; that Aero interfered with and prevented Casati from producing an offeror satisfactory to the terms of the contract; that Aero committed an anticipatory breach of the contract when it removed the property from the market; and that Casati's measure of damages resultant from such breach is the loss of profit or agreed upon commission which amounts to $46,000, plus interest.

## I.

Aero challenges the judgment of the trial court on three general grounds. First, Aero claims Casati's instant second amended complaint alleges a new cause of action (simple breach of contract) not within the scope of the remand instructions of *Casati* I. Aero argues the action,

---

[1] Aero also argues that since *Casati* I determined the La Salle offer was an offer to negotiate, the trial court was precluded from entertaining the question of whether that offer, made in a modified form satisfactory to the May 29 contract, would have permitted a $350,000 profit to Aero. A clear reading of *Casati* I discloses this question was deemed irrelevant to the characterization of the offer as one to negotiate. We find no language in *Casati* I which precludes such inquiry within the scope of the remanded issue.

stated in alternate counts, [1] is therefore barred by *res judicata* and law of the case. (See generally *People v. Bone* (1980), 82 Ill. 2d 282, 286-87, 412 N.E.2d 444, 446.) Furthermore, Aero contends the trial court erred when it did not identify the count upon which it based its determination and judgment.

■■ The basis for Aero's first contention rests upon the observation that Casati's amended complaint appears to plead an additional alternate cause of action because it is written in two counts. Although the form of the instant amended complaint does suggest two theories of recovery, the substance of the counts clearly alleges only that Aero repudiated the May 29, 1968, contract in one of several ways. The gravamen of Casati's claim is contained in paragraph nine of each count. There Casati alleges anticipatory repudiation was manifested by Aero's removal of the property from the market or Aero's refusal to sell the Building at a price permitting a $350,000 profit. Subsequent paragraphs of each count provide alternate damage formulations. We find no paragraph, separately or in the aggregate, which alleges any cause other than breach by anticipatory repudiation. Accordingly, Aero's claim is without merit.

## II.

### A.

Aero next contends the trial court erred when it found the legal theory of anticipatory repudiation applicable to the instant facts. Aero claims the instant contract was revocable at will for two reasons. First, Aero points to paragraph five of Casati's original complaint which states: "Plaintiff has fully performed said agreement dated May 29, 1968 to the date hereof." The "date hereof" was the filing date, February 7, 1969. Aero also points to paragraph five of the instant complaint which dates performance until "on or about January 22, 1969." Each of these paragraphs, Aero argues, is a judicial admission that plaintiff fully performed under the contract. After such performance, Aero claims that a bilateral executory contract is rendered unilateral and, citing *M. A. Felman Co. v. WJOL, Inc.* (1968), 104 Ill. App. 2d 66, 78, 243 N.E.2d 33, as authority, that a breach thereof is not subject to recovery under an anticipatory repudiation theory.

■■ Casati's "fully performed" allegations must be construed with the context in which they are found before they can be deemed judicial admissions. (*Gauchas v. Chicago Transit Authority* (1965), 57 Ill. App. 2d 396, 401, 206 N.E.2d 752; see generally *Malauskas v. Tishman Construction Corp.* (1980), 81 Ill. App. 3d 759, 761, 401 N.E.2d 1013.) It is clear to us that viewing these allegations within the context of a complaint alleging breach of contract by anticipatory repudiation, Casati was merely satisfying Supreme Court Rule 133(c) (Ill. Rev. Stat. 1967, ch.

110A, par. 133(c)). When alleging performance of a condition precedent in a contract, this Rule permits the general allegation that a party performed all the conditions on his part. (See generally *Ralph v. Karr Manufacturing Co.* (1974), 20 Ill. App. 3d 450, 454, 314 N.E.2d 219, *appeal denied* (1974), 57 Ill. 2d 606.) Casati alleged consideration (see part B below) by performance of the terms of the contract. Under the instant facts his "fully performed" allegations do not amount to an admission of full performance rendering the contract unilateral.

## B.

■■ Secondly, Aero apparently contends that because the instant contract does not establish an agency coupled with an interest, the contract was merely an agency to sell which is revocable at will. (See generally *Duffy v. Setchell* (1976), 38 Ill. App. 3d 146, 150, 347 N.E.2d 218.) The trial court, however, specifically found the instant contract to be bilateral, supported by consideration, and not revocable at will. Evidence at trial indicates Casati agreed to supervise construction and solicit tenants as well as buyers for Aero's Building. This is consideration. (See *Schwartz v. Akerlund* (1926), 240 Ill. App. 480, 484.) Although Casati received compensation for his performance, the record is silent as to whether it was severable from the performance of tendering an unconditional offeror. Accordingly, the trial court's finding was not against the manifest weight of the evidence and the contract was binding upon Aero. See generally *Andros v. Hansen Realty Co.* (1976), 44 Ill. App. 3d 635, 639, 358 N.E.2d 664; *Nicholson v. Alderson* (1952), 347 Ill. App. 496, 507, 107 N.E.2d 39; *Schwartz v. Akerlund.*

## C.

Aero also argues that the only measure of damages permitted under the theory of anticipatory breach is a *quantum meruit* recovery. Casati expressly waived that recovery by stipulation. Aero thus concludes the trial court erred when it granted recovery according to Casati's lost profits.

■■ Illinois case law is settled that "\* \* \*where one party repudiates the contract and refuses longer to be bound by it, the injured party has an election to pursue either of three remedies: He may treat the contract as rescinded, and recover upon *quantum meruit* so far as he has performed; or he may keep the contract alive for the benefit of both parties \* \* \*; or he may treat the repudiation as putting an end to the contract for all purposes of performance, and sue for the profits he would have realized if he had not been prevented from performing." (*Lake Shore & Michigan Southern Ry. Co. v. Richards* (1894), 152 Ill. 59, 80, 38 N.E. 773; *Builder's Concrete Co. v. Fred Faubel & Sons, Inc.* (1978), 58 Ill. App. 3d 100, 104, 373 N.E.2d 863.) The record supports the trial court's finding that Aero

removed the Building from the market. Under the instant facts it is clear that Casati seeks recovery of the commission he could have earned had the Building remained on the market. That commission or bonus represents the loss of profit Casati suffers from Aero's repudiation.

■■ Aero complains, however, that the trial court improperly computed Casati's loss of profit when the court considered the $1,350,000 La Salle offer to negotiate as the basis for Casati's commission. On remand it was stipulated La Salle's president and board chairman, Seymour B. Orner, testified during the original trial that he thought Aero's objection to the offer to negotiate was one of form which he could rectify by proposing an offer to purchase the Building by La Salle at the price of $1,350,000, in a form and substance satisfactory to Aero. He also testified La Salle was ready then to make an earnest money deposit satisfactory to Aero, but that Casati advised him that Aero's board of directors had removed the Building from the market. The trial judge relied upon this evidence when he found La Salle was a "purchaser, ready, willing and able to comply with the terms" of the broker's agreement. That finding is not against the manifest weight of the evidence. Furthermore, it is undisputed that as of October 31, 1969 (the date of completion according to Aero's president's letter to its mortgagee), the building cost was $943,457.51. An offer of $1,350,000 would have been sufficient to provide Aero with the $350,000 profit required by its contract with Casati. Although there exists an absence of certainty concerning Casati's damages, that should not operate to deny his recovery. See *Tri-County Grain Terminal Co. v. Swift & Co.* (1969), 118 Ill. App. 2d 313, 322, 254 N.E.2d 311.) Accordingly, the trial court did not err when it based Casati's commission upon an offer of $1,350,000.

### III.

Aero lastly contends that Casati's claim is barred by the doctrine of election of remedies. Aero argues that because Casati now seeks recovery under an anticipatory breach theory which is inconsistent with his unsuccessful breach of contract count, the doctrine operates to bar the former remedy.

■■ Casati's pursuit of this cause does not engage the operation of the election of remedies doctrine. For one proceeding to operate as a bar to another, the remedies of each must proceed from opposite and irreconcilable claims of right and must be so inconsistent that a party could not logically assume to follow one without renouncing the other. (*Fleming v. Dillon* (1938), 370 Ill. 325, 332, 18 N.E.2d 910.) That doctrine is inapplicable, despite a history of inconsistency in requested remedies, where no threat of double recovery exists, the defendant is not misled and has not changed his position in reliance on plaintiff's conduct, and there is

nothing about the action that would serve to bar the instant remedy by reason of *res judicata*. (*Rotogravure Service, Inc. v. R. W. Borrowdale Co.* (1979), 77 Ill. App. 3d 518, 527, 395 N.E.2d 1143; *Faber, Coe & Gregg, Inc. v. First National Bank* (1969), 107 Ill. App. 2d 204, 211, 246 N.E.2d 96.) This case presents no such threat or prejudice. Therefore, the instant cause is properly maintained.

In accordance with the aforementioned reasons the judgment of the circuit court of Cook County is affirmed.

Affirmed.

PERLIN, P. J., and STAMOS, J., concur.