WANDA LEE SCHMIDT, d/b/a Le Don's, Plaintiff-Appellant, v. THE DE-
PARTMENT OF REVENUE, Defendant-Appellee.

Fifth District   No. 5—86—0683

Opinion filed December 2, 1987.

Patrick B. Mathis, of Mathis, Marifian & Richter, Ltd., of Belleville, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Lynn M. Travis, Assistant Attorney General, of counsel), for appellee.

JUSTICE LEWIS delivered the opinion of the court:

The instant appeal involves the issue of whether a taxpayer may seek administrative review of a final tax assessment after applying for and obtaining amnesty for such taxes under the Illinois Tax Delinquency Amnesty Act (Pub. Act 83—1428, eff. Oct. 1, 1984) (hereinafter the Amnesty Act).

In February 1983 the plaintiff, Wanda Schmidt, d/b/a Le Don's (taxpayer), received a notice of tax liability from the defendant, Illinois Department of Revenue (Department), with regard to retailers' occupation taxes allegedly owed by the taxpayer for the years 1975 through 1981. The taxpayer paid the taxes owed under protest and sought a hearing under section 4 of the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1983, ch. 120, par. 443). Following hearing on the taxpayer's protest in February, March and August 1984 and a reaudit of the taxpayer's records, a final assessment was issued on April 10, 1985. On May 14, 1985, the taxpayer filed this action for administrative review of the Department's decision and final assessment (see Ill. Rev. Stat. 1983, ch. 120, par. 451).

In September 1984, while the taxpayer's protest proceeding was pending and prior to final assessment, the legislature enacted the Amnesty Act, which was effective from October 1, 1984, through November 30, 1984. The Act provided that upon application and payment of all taxes due from a taxpayer plus 50% of the interest due, the Department would grant amnesty for the taxes owed and would not seek to collect any other interest or penalties that might be applicable.

In November 1984 the taxpayer filed an application for amnesty with regard to the taxes that were due pursuant to the notice of tax liability, based upon the amount determined by the reaudit. The taxpayer requested that the amount paid under protest to the Department in February 1983 be applied to the amount due under the am-

nesty application, with the excess to be applied to the interest required under the amnesty provisions. On April 21, 1986, upon review of the taxpayer's amnesty application and payment by the taxpayer of the remaining interest required under the amnesty provisions, the Department granted the taxpayer's application for amnesty with regard to the taxes that were then in issue upon the taxpayer's complaint for administrative review, which had been filed on May 14, 1985.

Following the Department's approval of the taxpayer's amnesty application, the Department filed a motion to dismiss the complaint for administrative review, contending that the taxpayer's application for amnesty for the taxes in question served as an election of remedies and precluded continuing litigation for review of these tax liabilities. The trial court found that

> "through the voluntary act of paying taxes under the Amnesty Act, the [taxpayer] has chosen to accept the amount determined by the [Department] pursuant to the *** Retailers' Occupation Tax Act as the debt owed to the State by the [taxpayer] rather than contesting the amount. The [taxpayer] has made a binding election of remedies by deciding to take advantage of the Amnesty Act's provisions."

The court, accordingly, granted the Department's motion to dismiss the taxpayer's complaint for administrative review.

On appeal from the court's order of dismissal, the taxpayer asserts that the trial court erred in finding that the Amnesty Act precluded her from pursuing the remedies provided by the Retailers' Occupation Tax Act for challenging amounts found to be due by the Department. The taxpayer maintains that in the absence of an express statutory prohibition, the Amnesty Act and the regulations promulgated pursuant to that Act should not be construed so broadly as to restrict or negate a taxpayer's right under the Retailers' Occupation Tax Act to seek review of the Department's determination following protest and hearing and notice of final assessment (see Ill. Rev. Stat. 1983, ch. 120, pars. 443, 444, 451) or a claim for credit or refund (see Ill. Rev. Stat. 1983, ch. 120, pars. 445, 451). The taxpayer contends, rather, that she should have been allowed "to avail herself of the opportunity to reduce the potential, maximum exposure regarding all of the proposed taxes, penalties and interest" under the Amnesty Act, without forfeiting her right to contest the amounts due as provided by the Retailers' Occupation Tax Act.

The Amnesty Act, authorizing establishment of an amnesty program from October through November 1984, stated, in pertinent part:

> "The amnesty program shall provide that upon written appli-

cation by any taxpayer and payment by such taxpayer of all taxes due from such taxpayer to the State of Illinois for any taxable period ending prior to July 1, 1983, plus interest equal to 50% of the interest that would have been owed under the law imposing such tax liability, the Department shall not seek to collect any other interest or penalties which may be applicable and the Department shall not seek civil or criminal prosecution for any taxpayer for the period of time for which amnesty has been granted to a taxpayer.

\* \* \*

Amnesty shall not be granted to taxpayers who are a party to any \*\*\* civil \*\*\* litigation which is pending in any circuit court \*\*\* for nonpayment, delinquency or fraud in relation to any State tax imposed by any law of the State of Illinois.

The Department shall formulate such regulations as are necessary to implement the provisions of this Act." Pub. Act 83—1428, eff. Oct. 1, 1984, §3.

In response to the taxpayer's argument that she should be allowed to contest amounts found to be due after taking advantage of the amnesty provisions, the Department asserts that such an interpretation would be contrary to the intent of the Amnesty Act, which was to create finality with regard to the Department's tax assessments. As evidence of this intent, the Department cites the administrative rules promulgated pursuant to the Act, which allow no claims for credit to recover payments made in connection with an amnesty application. The Department asserts, moreover, that the taxpayer, by filing an application for amnesty for the amounts due, made an election of remedies and chose not to avail herself of her statutory right to challenge the assessment under the provisions of the Retailers' Occupation Tax Act.

We are aware of no other case dealing with the issue of whether a taxpayer may contest a final assessment of tax liability after applying for and obtaining relief from such taxes under the provisions of the Amnesty Act. While, as the taxpayer contends, the Act does not expressly prohibit one invoking its provisions from seeking administrative review of amounts found to be due pursuant to the taxing statute in question, this meaning may be inferred where such further review is inconsistent with the provisions of the Act and contrary to its object and purpose. It is a cardinal rule that a statute must be construed to ascertain and give effect to the intention of the legislature as expressed in the statute. (34 Ill. L. & Prac. *Statutes* §113 (1958).) In so construing a statute, the court should look to the object and purpose

to be attained by the statute (34 Ill. L. & Prac. *Statutes* §114 (1958)), and the words of the statute should be given their plain and ordinary meaning insofar as this accords with legislative intent (34 Ill. L. & Prac. *Statutes* §117 (1958)).

■ In the instant case the plain meaning and effect of the provisions of the Amnesty Act lead us to agree with the Department that the purpose of the Act was to create finality with regard to the Department's tax assessments. The Act provides for the payment of "all taxes due" from a taxpayer and states that, upon such payment, the Department shall not seek further collection or enforcement action against the taxpayer. Since the Act disqualifies from a grant of amnesty any taxpayer who is involved in tax-related litigation in the courts, it appears to be intended for tax amounts that have been assessed and are the subject of administrative hearing before the Department but that have not been challenged in the courts upon administrative review. In addition, the Department is barred from further litigation regarding the taxes for which amnesty is granted, which indicates that the grant of amnesty is intended to be a final resolution of amounts in dispute between the taxpayer and the Department. Since the Act refers to the amount of tax due upon making the amnesty application and does not contemplate litigation regarding this amount by either the Department or the taxpayer, we believe that the statutory language of "all taxes due" means those taxes assessed and due at the time the amnesty application is made, rather than amounts that might ultimately be found to be due following judicial review.

■ We find support for our reading of the statute in the administrative rules promulgated by the Department pursuant to the provisions of the Amnesty Act. In determining the meaning of a statute, a court may look to the contemporaneous construction placed on it by the officers or departments that are charged with the duty of executing it. (34 Ill. L. & Prac. *Statutes* §128 (1958).) Moreover, while rules and regulations adopted pursuant to statute may not alter, limit or extend the statute, such rules have the force and effect of law and are presumptively valid. *Eastman Kodak Co. v. Fair Employment Practices Comm'n* (1981), 86 Ill. 2d 60, 426 N.E.2d 877.

In the instant case, Rule 520.105(g) provides that while a taxpayer with an administrative hearing pending before the Department may apply for and receive amnesty,

> "[p]ayments made by such applicants under the amnesty program to reduce or eliminate a disputed amount which is the subject of an administrative hearing shall be deemed to be payments made in partial or total liquidation of an assessment

which has become final and no claim to recover any such payment will be approved." (86 Ill. Adm. Code 520.105(g) (1985).)

The intent exemplified by this rule to finalize disputes between a taxpayer and the Department is found again in Rule 520.110(f)(1), which states:

"The Amnesty Act contains no provision authorizing claims for credit to recover payments made in connection with amnesty applications. *Consequently, all payments made in connection with amnesty applications will be deemed final.* No claim for credit or refund to recover such payments shall be approved. The only exception will be the situation in which the Department determines that an amnesty payment is in excess of the amount due under amnesty in which case the Department will refund that portion of the payment which the Department determines to be in excess of the amnesty amount due." (Emphasis added.) 86 Ill. Adm. Code 520.110(f)(1) (1985).

■ These rules demonstrate that the Amnesty Act was intended as a method to end disputes pending between the Department and a taxpayer regarding the Department's assessments of tax liability. Thus, if a taxpayer wished to dispute part of an assessment, he or she would not apply for amnesty as to that part but would seek administrative review of the disputed amount. This situation is illustrated in example 3 accompanying Rule 520.105(b), in which a hypothetical taxpayer, wishing to dispute $2,000 of a $10,000 assessment, applied for amnesty for only the $8,000 undisputed amount and filed a timely request for administrative hearing as to the remaining $2,000. (See 86 Ill. Adm. Code 520.105(b)(3) (1985).) Similarly, in example 4 under Rule 520.105(b), the taxpayer did not apply for amnesty because he did not admit liability for the amount in question. See 86 Ill. Adm. Code 520.105(b)(4) (1985).

■ In the instant case the taxpayer applied for amnesty as to the entire amount of taxes due and, by doing so, chose to concede liability as to that amount. The Amnesty Act makes no provision for further review as to contested amounts, and the regulations adopted pursuant to that Act specifically prohibit any refund or credit as to amounts paid under the Act. While the taxpayer contends that the Department's rules and regulations impermissibly extended the provisions of the Amnesty Act by prohibiting further review of an assessed amount following a grant of amnesty, we find the Department's rules to be consistent with the provisions of the Act and believe that it would violate the meaning of the Amnesty Act to allow further contest of an amount paid under its provisions as sought by the taxpayer.

In enacting the Amnesty Act, the legislature provided another remedy, in addition to those already available under the Retailers' Occupation Tax Act, for a taxpayer receiving a notice of tax liability. The taxpayer could either accept the assessment and pay the liability under the amnesty provisions or the taxpayer could challenge the assessment through the procedures for protest and hearing (see Ill. Rev. Stat. 1983, ch. 120, pars. 443, 444) or claim for credit or refund (see Ill. Rev. Stat. 1983, ch. 120, par. 445).

▆ An election of remedies occurs when a party adopts a remedy that is so inconsistent with other remedies that he could not logically assume to follow one without renouncing the other. (*Casati v. Aero Marine Management Co.* (1980), 90 Ill. App. 3d 530, 413 N.E.2d 122; *Rotogravure Service, Inc. v. R. W. Borrowdale Co.* (1979), 77 Ill. App. 3d 518, 395 N.E.2d 1143.) In the instant case, the taxpayer could not logically assume to accept the Department's tax assessment and challenge it at the same time. Since the remedy of amnesty is inconsistent with the remedies of the Retailers' Occupation Tax Act for contesting an amount assessed by the Department, the taxpayer must be deemed to have made an election of remedies by applying for and obtaining a grant of amnesty.

For the reasons stated in this opinion, we affirm the judgment of the circuit court of Madison County.

Affirmed.

KARNS, P.J., and HARRISON, J., concur.