FIGGIE INTERNATIONAL, INC., Plaintiff-Appellant, v. THE DEPARTMENT OF REVENUE, Defendant-Appellee.

Fourth District   No. 4—87—0531

Opinion filed March 17, 1988.

Michael J. Garvey and Michael P. O'Brien, both of Baker & McKenzie, of Chicago, and Patrick V. Reilly, of Sorling, Northrup, Hanna, Cullen & Cochran, Ltd., of Springfield, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Shawn W. Denney, Solicitor General, and Rosalyn B. Kaplan, Assistant Attorney General, of Chicago, of counsel), for appellee.

PRESIDING JUSTICE GREEN delivered the opinion of the court:

Following an administrative hearing, on March 19, 1986, a hearing officer recommended that notices of tax liability sent by defendant Illinois Department of Revenue (Department) to divisions of plaintiff Figgie International, Inc., not be reduced. The basis for his recommendation was that plaintiff had voluntarily participated in an amnesty program, which now precluded the officer from deciding the merits of plaintiff's protests with regard to those tax liabilities. Defendant then issued final tax assessments to plaintiff. Pursuant to the Administrative Review Law (Ill. Rev. Stat. 1985, ch. 110, par. 3—101 et seq.), plaintiff sought judicial review of defendant's ruling, but the circuit court of Sangamon County affirmed that decision on July 2, 1987. Plaintiff has appealed. We affirm.

Plaintiff's contentions on appeal include the following: (1) its applications for amnesty were invalid under defendant's own administrative regulations (86 Ill. Adm. Code 520.105 et seq. (1985)) and should have been rejected; (2) the decision of the circuit court was improper, for it impermissibly deprived plaintiff, without a specific mandate from the Illinois Tax Delinquency Amnesty Act (Pub. Act 83—1428, eff. October 1, 1984; 1984 Ill. Laws 3012) (hereinafter Amnesty Act), of its right to a hearing on its protests granted to it pursuant to section 4 of the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1985, ch. 120, par. 443) (hereinafter ROTA); and (3) the decision of the circuit court was inequitable, since defendant's own letter and brochure did not advise plaintiff of the potential consequences of participating in the amnesty program, and the regulations themselves are ambiguous.

At all times pertinent, plaintiff was an Ohio corporation with its principal place of business located in Richmond, Virginia. Plaintiff conducted business in Illinois through a number of its corporate divisions. On October 11, 1984, and November 28, 1984, defendant notified plaintiff that plaintiff's divisions had not paid sufficient retailers' occupation taxes during the taxable period ending July 1, 1983. Plaintiff timely protested these tax deficiencies which defendant had alleged were due it. After acknowledging receipt of plaintiff's protests, defendant sent plaintiff a form letter notifying it of potential amnesty (waiver of all penalties and abatement of one-half of the in-

terest) available to qualified taxpayers and inviting it to apply for such amnesty. The brochure enclosed with the letter indicated that "businesses who ha[d] appeals pending with the Department of Revenue [were] eligible for Amnesty, providing they file[d] an amnesty application and [paid] the basic tax and one-half of the applicable interest." At no point in either the letter or the brochure, however, did it state that those who applied for amnesty and paid the outstanding taxes waived any further right to protest those taxes for which amnesty was being sought.

Based upon the information contained in defendant's letter and accompanying brochure, plaintiff submitted amnesty applications and checks for the amounts defendant alleged it owed for retailers' occupation taxes. In its cover letter, plaintiff specifically stated as follows: "[a]s described in the 'Amnesty Program' brochure, we remain protected for issues currently under protest." Defendant later acknowledged receipt of plaintiff's applications and payments.

Subsequently, a hearing was held on March 26 and 27, 1985, concerning plaintiff's protests. Although plaintiff's brief indicated the evidence presented at the hearing focused mainly on the merits of plaintiff's complaint, plaintiff noted in its brief that it informed the hearing officer of its applications for amnesty and received no comments or objections. The hearing officer issued his recommendation on March 19, 1986, that defendant not reduce plaintiff's tax liability. The hearing officer determined he was precluded from considering the merits of plaintiff's protests, as plaintiff voluntarily chose to participate in an amnesty program in which no refunds for payments are allowed. Defendant issued final assessments for the tax deficiencies and, on May 27, 1986, notified plaintiff that it had approved plaintiff's applications for amnesty.

Plaintiff filed a complaint for judicial review of the decision and proceedings which culminated in defendant's final assessment. On July 2, 1987, the circuit court of Sangamon County affirmed the decision of the Illinois Department of Revenue.

■ Plaintiff initially argues the applications for amnesty which it filed with defendant were invalid under defendant's own administrative regulations, and plaintiff claims defendant should have rejected them. In particular, plaintiff contends the money it submitted to defendant was not for "taxes due" within the meaning of the regulations. In addition, plaintiff maintains it did not attach any tax returns as required by the regulations. Thus, plaintiff argues the money it submitted with its applications for amnesty should either be refunded or applied to its existing liability. Defendant contends, on

the other hand, that plaintiff's attempt to discredit its own applications for amnesty is unpersuasive and should be rejected by us on appeal.

Section 520.105 of the amnesty regulations (86 Ill. Adm. Code 520.105 (1984)) contains requirements with regard to applications for amnesty. According to those regulations, an applicant must submit the following items within the prescribed period: (1) its application for amnesty; (2) tax returns or amended tax returns or waivers of restrictions or assessments and collections (for nonreported or underreported tax liabilities); and (3) payment for *all taxes due* plus one-half of the applicable interest. The regulations warn the applicant that " '*(f)ailure to pay all taxes due to the State shall invalidate any amnesty granted pursuant to this Act.*' " (Emphasis in original.) 86 Ill. Adm. Code 520.105(b) (1985).

The regulation goes on to define the term "all taxes due" as follows: "all liability for the tax for which amnesty application is being made incurred during the taxable period for which amnesty application is being made." The regulation also states, however, that the term "does *not* include amounts which have not been determined by the Department." (Emphasis added.) (86 Ill. Adm. Code 520.105(b) (1985).) Section 520.105 contains several examples which further explain the meaning of the term. Plaintiff relies heavily upon example No. 3 in particular. It described the performance of an audit which revealed the taxpayer owed $10,000 in retailers' occupation taxes. Taxpayer conceded he owed $8,000 of the $10,000 allegedly due, but he disputed the remaining $2,000. Therefore, he signed an amended return, prepared an application for amnesty, and paid $8,000 plus the applicable interest owed on that amount. Since taxpayer did not include the $2,000 in the amended return, the Department then issued taxpayer a notice of tax liability for that amount. Taxpayer subsequently made a timely request for an administrative hearing. The example concluded by noting that, in the situation as described, amnesty could be approved for $8,000. It reasoned: "This is so because[,] while the $8,000 was due at the time the amnesty application was made by virtue of the signed amended return, the $2,000 in dispute was *not due* because the taxpayer had made a timely request for an administrative hearing." (Emphasis added.) 86 Ill. Adm. Code 520.105(b)(3) (1985).

Example No. 3 is clearly distinguishable from the instant case. The taxpayer in the example pursued two different avenues of relief: it sought amnesty for that portion of the taxes for which it conceded liability and requested an administrative hearing for the remaining

taxes under protest. Here, on the other hand, plaintiff initially disputed the entire amount which defendant claimed was due and owing and made a timely request for an administrative hearing. However, it subsequently applied for amnesty and submitted payment for that same amount. By submitting applications for amnesty and payment for the full amount of the taxes allegedly due, plaintiff in essence withdrew its earlier protest and conceded liability for that amount.

Plaintiff attempted to retain its right to protest in its cover letter to defendant by stating that, "[a]s described in the 'Amnesty Program' brochure, we remain protected for issues currently under protest." However, because the brochure did not address possible reservation of rights of protest, plaintiff's statement in its letter did not constitute a sufficient limitation upon its request for amnesty. Thus, we conclude plaintiff submitted payment for "all taxes due" as required by the administrative regulations.

■ We also find no merit in plaintiff's related argument that defendant should have rejected its applications because it failed to include any returns as required by the regulations. The record indicates that an amended return was submitted for one of plaintiff's divisions. In addition, the regulation states a grant of amnesty will be invalidated for failure to pay all taxes due. (86 Ill. Adm. Code 520.105 (1985).) The legislation does not suggest that failure to comply with other regulation requirements also results in invalidation of amnesty. Nor do the regulations appear to grant taxpayers a defense to the Department of Revenue's approval of an application for amnesty.

■ Next, plaintiff contends the circuit court erred in affirming the administrative ruling, as it claims the hearing officer's interpretation of the amnesty regulations impermissibly emasculated its right to an administrative hearing under the ROTA. If, in fact, the hearing officer correctly interpreted the amnesty regulations, plaintiff argues defendant violated the rule that no administrative body can alter a statute's operation by exercise of its rulemaking powers.

The instant case is factually similar to the recent case of *Schmidt v. Department of Revenue* (1987), 163 Ill. App. 3d 269, 516 N.E.2d 973. There, plaintiff argued she should be allowed to take advantage of the tax benefits available under the Amnesty Act without forfeiting her right to protest taxes allegedly due under the ROTA. However, in construing the amnesty provisions, the Fifth District determined that "the purpose of the [Amnesty] Act was to create finality with regard to the Department's tax assessments," and a "grant of amnesty [was] intended to be a final resolution of amounts in dispute

between the taxpayer and the Department." (*Schmidt*, 163 Ill. App. 3d at 273, 516 N.E.2d at 976.) The amnesty regulations themselves provide that all payments are final, and no refunds will be approved. 86 Ill. Adm. Code 520.105(g) (1985).

The court in *Schmidt* further noted that a taxpayer had a number of remedies available to it upon receipt of a notice of tax liability. It could concede liability, pay the tax as assessed and receive the advantages through amnesty, or it could challenge the tax through available review procedures. If a taxpayer desired to contest part of a tax assessment, the court noted he or she would not apply for amnesty for that portion but rather would seek administrative review. Once a taxpayer chose a particular avenue of relief, the court determined that an election of remedies occurred. Since the taxpayer in *Schmidt*, as in the instant case, applied for amnesty for the entire amount of the taxes the State alleged were due, the court concluded the taxpayer "*chose to concede liability as to that amount.*" (Emphasis added.) *Schmidt*, 163 Ill. App. 3d at 274, 516 N.E.2d at 977.

We agree with the reasoning of *Schmidt*. Although the Amnesty Act and applicable regulations do not explicitly prohibit a taxpayer from pursuing other available avenues for protesting tax liability, the purpose and spirit of those laws strongly imply such a result. To allow a taxpayer to continue to protest its tax liability following an application for and allowance of amnesty would be inconsistent with the very purpose of amnesty. It was plaintiff's voluntary act, though, and not the amnesty provisions themselves, which precluded plaintiff from resorting to other remedies. By voluntarily applying for amnesty and submitting payment for taxes due, plaintiff chose to settle its dispute rather than continue to contest the amount of taxes owed. In essence, the taxpayer entered into a settlement agreement with the Department. A settlement agreement is final and binding upon the parties. (*Thatcher v. Eichelberger* (1981), 102 Ill. App. 3d 231, 429 N.E.2d 1090.) It acts as a bar to further proceedings. *Keim v. Kalbfleisch* (1978), 57 Ill. App. 3d 621, 373 N.E.2d 565.

■ Finally, plaintiff claims it was inequitable to deny it the right to receive a determination as to the merits of its protest. More specifically, plaintiff contends the regulations themselves were ambiguous, and defendant's brochure further misled it into thinking it retained its hearing rights under the ROTA. Defendant's response is that plaintiff's self-serving interpretation of words in a brochure does not operate to estop the government. In addition, defendant argues plaintiff is charged with knowledge of the law, and plaintiff's professed ignorance of it is no excuse.

As noted earlier, the Amnesty Act and the regulations implementing it do not explicitly prohibit a taxpayer from pursuing other available avenues for protesting tax liability. However, many of the regulatory provisions disclose the final nature of the amnesty benefits. For example, section 520.110(f) states that all payments with regard to the amnesty program are final, and no refund of payments made will be allowed. If an application for amnesty is not approved, payments will be applied to existing liability rather than refunded. (86 Ill. Adm. Code 520.110 (1985).) In addition, section 520.105(g) specifically provides as follows:

> "Taxpayers with administrative hearings pending before the Department may apply for and receive amnesty for any tax and any taxable period under the same circumstances and subject to the same requirements as any other taxpayer. Payments made by such applicants under the amnesty program to reduce or eliminate a disputed amount which is the subject of an administrative hearing *shall be deemed to be payments made in partial or total liquidation of an assessment which has become final[,] and no claim to recover any such payment will be approved.*" (Emphasis added.) (86 Ill. Adm. Code 520.105(g) (1985).)

These regulatory provisions unambiguously inform a potential applicant for amnesty of the finality of its remedy. Clearly, a sophisticated company such as plaintiff could infer from these provisions that any right it possessed to a hearing under the ROTA would be waived upon application for amnesty. Thus, we conclude it was not inequitable for the court to refuse to consider the merits of plaintiff's protest based on the amnesty provisions themselves.

■ Nor do we conclude any inequity occurred as a result of the cover letter and brochure which defendant sent to plaintiff. The brochure contained brief answers to basic questions about the program. The brochure initially described amnesty as a period in which "Illinois taxpayers can *settle* their state tax debts without fear of prosecution." (Emphasis added.) Regarding eligibility to participate in the program, the brochure indicated that "businesses who have appeals pending with the Department of Revenue are eligible for Amnesty, providing they file an amnesty application and pay the basic tax and one-half of the applicable interest." Remaining portions of the brochure discussed the taxes which were included under amnesty, how to apply for amnesty and how to obtain additional information and assistance from the Department of Revenue. The brochure was entirely silent, however, on what effect applications for amnesty would

have on other available remedies.

To support its argument that it is entitled to a refund because defendant's brochure misled it, plaintiff cites *American Acoustics & Plastering Co. v. Department of Revenue* (1982), 107 Ill. App. 3d 616, 437 N.E.2d 419. There, the Department of Revenue assessed taxes against a taxpayer and then sent him a form letter which outlined the various methods of recourse available to the Department to collect those taxes if not paid. However, the Department failed to inform the taxpayer that the statute of limitations had run on much of the taxes assessed. The taxpayer paid the taxes in full. The Second District concluded the Department's letter caused the taxpayer to believe the Department could collect all taxes assessed, when in fact it could not, and thereby induced the taxpayer to pay the full amount of those taxes.

*American Acoustics* is distinguishable from the instant case in several respects. The brochure in question contained no erroneous information as did the letter in *American Acoustics*. Although the brochure was silent regarding the effect of an application for amnesty on the pursuit of other remedies, the absence of such information was not misleading. In addition, the brochure contained a toll-free number which interested taxpayers could call to obtain assistance or further information about the amnesty program. Nor did defendant's cover letter to plaintiff attempt to induce or coerce plaintiff into participating in the amnesty program. Instead, the letter was informational in nature.

For the reasons stated in this opinion, we affirm the judgment of the circuit court of Sangamon County.

Affirmed.

LUND and SPITZ, JJ., concur.